150 P.3d 810

J.P. SCHMIDT, in his capacity as Liquidator and Trustee of the Pacific Group Medical Association Liquidating Trust, Plaintiff–Appellee,

v.

PACIFIC BENEFIT SERVICES, INC., Defendant–Appellant,

and

Henry Akiu, Jr.; Randolph Ko; Bryon Graves, Jr.; Edwin Ramos; William A. Williams (also known as William O. Williams or Billy Williams); Richard Stiles; Mark Hopkins; Harold Y. Kuwahara; Juan Martin Gonzales; Mike Cleare; Watson Wyatt & Company; Wikoff Combs & Co., CPA's; Four Winds RSK, Inc.; Auli'i, Inc.; Toral–Vahey & Associates; Bridgeport Benefits, Inc., a foreign corporation; Nevada Equity & Growth Management, a foreign corporation; PGMA, Inc., a Hawai'i corporation; Wayne Blasman; Doug Rolefson; Terry Conlan; Lee Ann Kim; Donald Wakeman; James R. Lindsey; John Does 1–50; Jane Does 1–50; Doe Corporations 1–50; Doe Partnerships 1–50, and Doe Entities 1–50, Defendants.

and

Henry Akiu, Jr. and Edwin Ramos, Third–Party Plaintiffs,

v.

Pacific Benefits Services, Inc., a Hawai'i corporation, Third–Party Defendant–Appellant,

and

Peter Po Sing Wong; Susan Wong; Ling Fong Wong; George Mingo; Brenda Mingo; Pacific Equity Growth & Management, Inc., a Hawai'i corporation; Pacific Equity Factors, Inc., a Hawai'i corporation; Pacific Employee Leasing, Inc., a Hawai'i corporation; Hawaii Dental Plan, Inc., a Hawai'i corporation; P.S. Wong, Ltd., a Hawai'i corporation; Po Sang Corp., a foreign corporation;

Nishihama & Kishida, CPA'S, Inc., a Hawai'i corporation; John J. D'Amato; D'Amato & Maloney, a Hawai'i law partnership; John Does 1–10; Jane Does 1–10; and Doe Corporations 1–10, Third–Party Defendants.

J.P. Schmidt, in his capacity as Liquidator and Trustee of the Pacific Group Medical Association Liquidating Trust, Plaintiff–Appellee,

v.

Pacific Benefit Services, Inc., Defendant–Appellant,

and

Peter Po Sing Wong; Watson Wyatt Worldwide; Watson Wyatt & Company; The Wyatt Company; Wikoff Combs & Co. CPA's, Inc.; Nishihama & Kishida, CPA's, Inc., a Hawai'i corporation; Pacific Equity Growth & Management, Inc., a Hawai'i corporation; Po Sang Corp., a foreign corporation; Hawaii Dental Health Plan, Inc. (also known as Hawai'i Dental Plan, Inc.), a Hawai'i corporation; Four Winds Rsk, Inc., a Hawai'i corporation; Toral–Vahey & Associates; Wayne Blasman; Doug Rolefson; Bridgeport Benefits, Inc., a foreign corporation; Nevada Equity & Growth Management, a foreign corporation; Susan Wong; Ling Fong Wong; P.S. Wong, Ltd., a Hawai'i corporation; Pacific Employee Leasing, Inc., a Hawai'i corporation; Pacific Equity Factors, Inc., a Hawai'i corporation; PGMA, Inc., a Hawai'i corporation; PGMA Dental, a Hawai'i corporation; Terry Conlan; Lee Ann Kim; Donald Wakeman; James R. Lindsey; John Does 1–50; Jane Does 1–50; Doe Corporations 1–50; Doe Partnerships 1–50, and Doe Entities 1–50, Defendants.

No. 25755.

Supreme Court of Hawai'i.

May 31, 2006.

Reconsideration Denied July 6, 2006.

As Corrected July 6, 2006.

Charles S. Lotsof, Honolulu, on the briefs, for defendant-appellant Pacific Benefit Services, Inc.

Clifford K. Higa, Wendell J. Fuji, Lanson K. Kupau, and Duane C. Seabolt, Honolulu, (of Kobayashi, Sugita & Goda), on the briefs, for plaintiff-appellee J.P. Schmidt, in his capacity as Liquidator and Trustee of the PGMA Liquidating Trust.

MOON, C.J., LEVINSON, NAKAYAMA, AND ACOBA, JJ.; CIRCUIT JUDGE AUGUST, ASSIGNED BY REASON OF VACANCY.

Opinion of the Court by MOON, C.J.

The instant appeal involves an arbitration award issued on November 25, 2002 (Award) in favor of plaintiff-appellee J.P. Schmidt, in his capacity as Liquidator and Trustee of the Pacific Group Medical Association Liquidating Trust [1] [hereinafter, Schmidt] and against defendant-appellant Pacific Benefit Services (PBS). PBS appeals from the Circuit Court

1. The case was originally brought under the name of the previous Insurance Commissioner, Wayne C. Metcalf, III, in his capacity as Liquidator and Trustee of the Pacific Group Medical Association Liquidating Trust. J.P. Schmidt, Esq. succeeded Metcalf as the Insurance Commissioner and was substituted as plaintiff pursuant to Hawai'i Revised Statutes (HRS) § 431:15–307(a)(1993). Section 431:15–307(a) provides in pertinent part:

An order to liquidate the business of a domestic insurer *shall appoint the commissioner and the commissioner's successors in office liquidator*, and shall direct the liquidator forthwith to take possession of the assets of the insurer and to administer them under the general supervision of the court. . . .
(Emphasis added.)

2. The Honorable Richard W. Pollack presided over the instant case.

of the First Circuit's [2] combined order, filed on March 10, 2003, (1) denying PBS's Motion to Vacate Arbitration Award (motion to vacate), (2) granting Schmidt's Motion for Order Confirming Arbitration Decision and Award (motion to confirm), and (3) dismissing Schmidt's Motion to Strike PBS's Motion to Vacate Arbitration Award (motion to strike).

On appeal, PBS asserts that the circuit court erroneously concluded that its motion to vacate was untimely and, therefore, erred in confirming the Award in total disregard of the merits of its motion to vacate. Specifically, PBS contends that the Award did not conform to the statutory requirements under HRS § 658–8 (1993), quoted *infra*. Based on the following, we affirm the circuit court's March 10, 2003 order confirming the Award.

## I. BACKGROUND

On June 8, 2001, Metcalf, in his capacity as then-Liquidator and trustee of the PGMA Trust [hereinafter, Schmidt, *see supra* note 1] filed his Second Amended Complaint against, *inter alia*, PBS.[3] Schmidt and PBS reached a settlement in which they agreed to submit Schmidt's claims against PBS, as alleged in the second amended complaint, to binding arbitration to be conducted by James F. Ventura, Esq. The parties agreed that the sum of one hundred thousand dollars ($100,000), less the arbitrator's fees, was to be awarded to the prevailing party.[4] The arbitration hearing took place on November 6,

3. The Second Amended Complaint named numerous defendants and requested that the court hold them jointly and severally liable for damages relating to unpaid insurance claims and debts resulting from eighty-one different counts, alleging, *inter alia*, unfair and deceptive trade acts or practices, negligence, unjust enrichment, negligent misrepresentation, breach of fiduciary duties, and tortious conduct. Schmidt settled his claims against the other defendants. Therefore, the instant suit involves only the claims against PBS.

4. Schmidt notes in his answering brief that $100,000 represents the amount in dispute between the parties. Schmidt also notes that "the amount is currently held in an escrow account and resulted from the auction of certain office equipment in the liquidation special proceeding."

2002. On November 25, 2002, the arbitrator issued his decision as set forth in the Award. In a letter accompanying the Award, the arbitrator stated in pertinent part:

> Enclosed is my decision and award in this matter. I have not declared before a notary that this is my decision. I understand that this is no longer required. If you need a notary, please advise. My bill for this arbitration is $6,000.00 plus tax of $240.00 or a total of $6,240.00.

In the Award, the arbitrator stated in pertinent part that:

> I have reviewed all briefs submitted between the parties, listened to the live testimony and reviewed all of the exhibits submitted. Based on all of the above[,] the following is my decision and award.... I hereby find that [Schmidt] is entitled to the sum of $100,000 minus my arbitration fees. I therefore award to the Liquidator the $100,000 minus my arbitration fee.

On December 10, 2002, Schmidt filed his motion to confirm the Award. The Award, as well as the arbitrator's accompanying letter, was attached as Exhibit "B" to the motion to confirm. The declaration of Schmidt's counsel stated that, "[a]ttached hereto as Exhibit 'B' is a true and correct copy of the Arbitrator's Decision And Award. The Arbitrator's Decision and Award was served on [Schmidt] on November 26, 2002." On January 15, 2003, PBS submitted a memorandum opposing the confirmation of the Award, asserting that the Award failed to conform to the formal requirements of HRS § 658–8, which provides in pertinent part:

> The award *shall be* in writing and *acknowledged or proved in like manner as a deed for the conveyance of real estate, and delivered to one of the parties or the party's attorney* .... At any time within one year after the award is made and served, any party to the arbitration may apply ... for an order confirming the award. Thereupon the court shall grant such an order, unless the award is vacated, modified, or corrected, as prescribed in sections 658–9 and 658–10....

(Emphases added.) Specifically, PBS contended that,

> [Schmidt's motion to confirm] is predicated on an unverified writing ... [and, u]nder the statute in effect and governing the arbitration in this instance, an award absolutely must be acknowledged or proved "in like manner as a deed for the conveyance of real estate." [HRS] § 658–8.

PBS further contended that the requirement that the Award be acknowledged "goes to the heart of what went terribly wrong with the proceedings conducted by the arbitrator." In its memorandum, PBS criticized the arbitrator for not taking his duties seriously and for dismissing PBS's contention that one of Schmidt's witnesses had presented misleading testimony.

On January 17, 2003, in response to PBS's opposition, the arbitrator notarized a copy of the Award. Later that same day, Schmidt filed a reply memorandum in support of his motion to confirm, stating that "[t]he Award issued by the [a]rbitrator has been acknowledged and is no longer in technical violation of HRS [§ ] 658–8." According to Schmidt's reply memorandum, PBS's "sole argument" was rendered moot by the notarization. Schmidt also argued that PBS's arguments regarding misconduct were barred by HRS §§ 658–9, –10, and –11 (1993), quoted *infra* because PBS did not file a motion to vacate, modify, or correct the Award within 10 days after it was "made and served."

On January 22, 2003, PBS filed its motion to vacate, pursuant to HRS § 658–9, arguing that the decision "exceeded the authority of the arbitrator, which was limited to claims against PBS in the Second Amended Complaint, and/or as having been procured by corruption, fraud, and/or undue means." On the same day, Schmidt moved to strike PBS's motion to vacate.

As previously indicated, on March 10, 2003, the circuit court entered its order (1) denying PBS's motion to vacate, (2) granting Schmidt's motion to confirm, and (3) dismissing Schmidt's motion to strike as moot. Therein, the circuit court stated that:

> Here, the ten days [allowing for a motion to vacate] began running upon the date counsel for PBS received the award that had been forwarded to him with Mr. Ventura's letter of November 25, 2002. As the

court has stated, there is nothing before the court to indicate that counsel for PBS did not receive this letter in the time frame of normal delivery. [Schmidt's] counsel indicates that he received the letter on November 26, 2002. In light of the fact that there is no contrary evidence before the court, the court will assume counsel for PBS received the award on or about the same date as [Schmidt's] counsel. Accordingly, the motion to vacate was required to be filed before December 9, 2002 at the latest. Instead the motion was not filed until January 22, 2003.

For the foregoing reasons, the court finds that the time to file a motion to vacate the arbitration award expired before PBS filed their motion. Because PBS's motion to vacate the arbitration award was untimely filed, it is denied. Accordingly, the Court does not look to the merits of [Schmidt's] arguments on vacating the award. [Schmidt's] motion to confirm the arbitration award is granted. [Schmidt's] motion to strike [PBS]'s motion to vacate arbitration filed January 22, 2003 is moot in light of the court's denial of the motion to vacate for untimeliness.

(Capital letters altered.) PBS filed its Notice of Appeal on April 8, 2003.

On April 14, 2003, prior to the transmission of the record on appeal to this court, Schmidt moved to dismiss PBS's appeal for lack of appellate jurisdiction and also requested an award of reasonable attorney's fees and costs (motion to dismiss). Schmidt argued that this court lacked jurisdiction over the appeal because: (1) appeals may not be taken from a *denial* of a motion to vacate an arbitration award, but only from (a) an order vacating an award, or (b) from a judgment entered upon an award, *e.g.*, a confirmation of an award; and (2) a party may not appeal the confirmation of an award unless the party has previously filed a *timely* motion under HRS § 658–9 (grounds for vacating an award) or § 658–10 (grounds for modifying or correcting an award). On April 30, 2003, this court denied the motion to dismiss

"without prejudice to [Schmidt] filing a statement contesting jurisdiction in accordance with [Hawai'i Rules of Appellate Procedure] Rule 12.1 (2003)[5] or a subsequent motion to dismiss after the record on appeal is transmitted." The record on appeal was thereafter filed on June 9, 2003. On June 12, 2003, Schmidt filed his second motion to dismiss PBS's appeal for lack of appellate jurisdiction and again for an award of reasonable attorney's fees and costs. On June 19, 2003, PBS filed its memorandum in opposition to Schmidt's second motion to dismiss. Therein, PBS contended that it was entitled to appeal the confirmation of the Award because the circuit court erred in confirming the Award based on an erroneous conclusion that its motion to vacate was untimely. On July 3, 2003, this court denied Schmidt's second motion to dismiss "without prejudice to [Schmidt] presenting any argument in the answering brief."

## II. *STANDARDS OF REVIEW*

### A. *Review of an Arbitration Award*

■ Judicial review of an arbitration award is limited by the following precepts:

First, because of the legislative policy to encourage arbitration and thereby discourage litigation, arbitrators have broad discretion in resolving the dispute. Upon submission of an issue, the arbitrator has authority to determine the entire question, including the legal construction of terms of a contract or lease, as well as the disputed facts. In fact, where the parties agree to arbitrate, they thereby assume all the hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact.

Second, correlatively, judicial review of an arbitration award is confined to the strictest possible limits. An arbitration award may be vacated only on the four grounds specified in HRS § 658–9 and modified and corrected only on the three grounds specified in HRS § 658–10.

---

5. HRAP Rule 12.1(a) states: "Within 10 days after the record on appeal is filed each appellant and cross-appellant shall file a statement of jurisdiction. Any appellee contesting jurisdiction may file a statement contesting jurisdiction within in the same period."

Moreover, the courts have no business weighing the merits of the award.

Third, HRS §§ 658-9 and -10 also restrict the authority of appellate courts to review judgments entered by circuit courts confirming or vacating the arbitration awards.

*Daiichi Hawai'i Real Estate Corp. v. Lichter,* 103 Hawai'i 325, 336, 82 P.3d 411, 422 (2003) (internal quotation marks, brackets, ellipses points, and citations omitted).

B. *Findings of Fact and Conclusions of Law*

█ [This court] review[s] a trial court's findings of fact under the clearly erroneous standard. A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed....

Hawai'i appellate courts review conclusions of law *de novo,* under the right/wrong standard. Under the right/wrong standard, this court examines the facts and answers the question without being required to give any weight to the trial court's answer to it.

*Id.* at 337, 82 P.3d 411, 82 P.2d at 423 (brackets, internal quotation marks, and citations omitted).

### III.  *DISCUSSION*

A. *Jurisdiction*

**1. Whether PBS May Appeal the Denial of its Motion to Vacate the Award**

█ HRS § 658-15 (1993) provides:

Unless the agreement for award provides that no appeal may be taken[,] an appeal may be taken from an order vacat-

ing an award, or from a judgment entered upon an award, as from an order or judgment in an action, otherwise no appeal may be had.

Schmidt contends that HRS § 658-15 precludes an appeal from an order *denying* a motion to vacate an arbitration award because it only allows for appeals from (1) an order vacating an award or (2) a judgment upon the award, *i.e.,* a confirmation. PBS counters that the intent of HRS § 658-15 is to avoid piecemeal appeals and that "the [c]ircuit [c]ourt's decision to deny vacating the [A]ward was an integral step in the process leading to the confirmation" of the Award. PBS further posits that, once there is a final order confirming the Award, the correctness of the underlying order denying the motion to vacate may be addressed on appeal according to the very case cited by Schmidt for the opposite contention. We agree with PBS.

█ " 'The right of appeal is purely statutory and exists only when given by some [c]onstitutional or statutory provision.' " *Salud v. Fin. Sec. Ins. Co.,* 69 Haw. 427, 429, 745 P.2d 290, 292 (1987) (quoting *Chambers v. Leavey,* 60 Haw. 52, 57, 587 P.2d 807, 810 (1978)). Under HRS § 641-1(a) (1993), "appeals [shall be] allowed in civil matters from all final judgments, orders, or decrees of circuit ... courts ... to the supreme court or to the intermediate appellate court, except as otherwise provided by law[.]" As previously stated, HRS § 658-8 permits any party to an arbitration "[a]t any time within one year after the award is made and served, ... [to] apply to the circuit court ... for an order confirming the award. Thereupon[,] the court *shall grant such an order,* unless the award is vacated, modified, or corrected, as prescribed in sections 658-9[ [6]] and 658-

---

6.  HRS § 658-9 provides:

In any of the following cases, the court may make an order vacating the award, upon the application of any party to the arbitration:

(1) Where the award was procured by corruption, fraud, or undue means;

(2) Where there was evident partiality or corruption in the arbitrators, or any of them;

(3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing

to hear evidence, pertinent and material to the controversy; or of any other misbehavior, by which the rights of any party have been prejudiced;

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award, upon the subject matter submitted, was not made.

Where an award is vacated and the time, within which the agreement required the award to be made, has not expired, the court

10[7]."  A party seeking to vacate, modify, or correct an award must serve notice upon the adverse party or the party's attorney "within ten days after the award is made and served."  HRS § 658–11 (1993).

In *Salud,* this court was presented with the question whether an appeal may be taken from an order *denying* a motion to vacate an award.  In ruling that there was no such right, this court stated that:

> When "an order confirming, modifying, or correcting an award" is granted, the relevant statute directs that "the same shall be filed in the office of the clerk of the circuit court and this shall constitute the entry of judgment."  HRS § 658–12.  And "an appeal may be taken from such judgment as set forth thereafter in chapter 658."  *Id.* But nothing set forth thereafter allows an appeal from an order *denying* a motion to vacate an award; HRS § 658–15 proclaims instead in unmistakable terms that "an appeal may be taken from an order vacating an award, or from a judgment entered upon an award, otherwise no appeal may be had."
>
> Still, this does not mean that the *denial* of a motion to vacate an award by the circuit court necessarily forecloses an appeal sanctioned by HRS § 658–15.  The unsuccessful movant's recourse would then be a motion to confirm the award.  Since the circuit court has already reviewed the award and decided no grounds exist for vacating it, a confirmation should follow.  The movant could then perfect an appeal and obtain appellate review of the order confirming the award.
>
> The foregoing procedure would also make it possible for someone whose motion for modification or correction of an arbitrator's award has been denied to seek appellate review of the circuit court's ruling.  And where confirmation of the award is sought to facilitate an appeal in either situation, the movant would not, of course, be estopped from urging the vacation, modification, or correction of the award on appeal.

*Id.* at 430–31, 745 P.2d at 292–93 (brackets, footnotes, and ellipses points omitted) (emphases in original).[8]  Further, in *Oppenheimer v. AIG Hawai'i Insurance Co.,* 77 Hawai'i 88, 881 P.2d 1234 (1994), this court discussed the holding in *Salud,* stating that:

> Because the statutory provisions governing judicial review of arbitration awards precluded an appeal from an order *denying* a motion to vacate an arbitration award, we held in *Salud* that this court lacked jurisdiction.  However, implicit in our ruling in *Salud* is that, by virtue of HRS § 658–12, an order confirming an arbitration award is a final judgment from which an appeal may be taken.  *Salud,* 69 Haw. at 431, 745 P.2d at 293.

---

may in its discretion direct a rehearing by the arbitrators.

7.  HRS § 658–10 provides:
> In any of the following cases, the court may make an order modifying or correcting the award, upon the application of any party to the arbitration:
> (1) Where there was an evident miscalculation of figures, or an evident mistake in the description of any person, thing, or property, referred to in the award;
> (2) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted;
> (3) Where the award is imperfect in a matter of form, not affecting the merits of the controversy.
> The order may modify and correct the award, so as to effect the intent thereof, and promote justice between the parties.

8.  In *Excelsior Lodge Number One, Independent Order of Odd Fellows v. Eyecor, Ltd.,* 74 Haw. 210, 847 P.2d 652 (1992) [hereinafter, *Excelsior Lodge* ], this court made a contrary statement in a footnote, that:

> HRS § 658–15 will continue to be available to parties ... who have previously brought [motions under HRS §§ 658–9 and 658–10].  *These parties will have the option of either appealing the trial court's denial of their specific §§ 658–9 or 658–10 motion, or of appealing a trial court's subsequent confirmation order,* though that appeal will be limited to a consideration of the seven specific grounds *timely raised* under HRS §§ 658–9 and 658–10.

*Id.* at 227 n. 16, 847 P.2d at 660 n. 16 (emphases added).  Inasmuch as the issue before the court was the scope of an appeal of a confirmation award, and not the appeal of a *denial* of a motion to vacate, modify, or correct an award, the statement was not essential to the holding in that case and, based on the subsequent case law, was not intended to overrule *Salud.*

*Id.* at 91, 881 P.2d at 1237 (footnote omitted) (emphasis added). Thus, an order *denying* a motion to vacate an arbitration award is not a final judgment that may be directly appealed.

Here, the award was confirmed in the same order that denied PBS's motion to vacate. As such, there is no issue of finality here. However, inasmuch as HRS § 658–15 directs that the circuit court "shall" confirm an order that is not vacated prior to confirmation, we now examine the circumstances under which a party may urge vacation of an award at confirmation and on appeal.

### 2. Whether PBS has the Right to Appeal the Confirmation of the Award under HRS § 658–15

■ In *Excelsior Lodge*, this court expressly held that an appeal under HRS § 658–15 from a confirmation of an arbitration award is restricted to the grounds set forth in a *timely* motion to vacate, modify, or correct an award under HRS §§ 658–9 and 658–10. *Id.* at 227, 847 P.2d at 660. In reaching its conclusion, this court summarized the policies underlying HRS chapter 658:

> It is generally considered that parties resort to arbitration to settle disputes more expeditiously and inexpensively than by a court action. It must be deemed that the primary purpose of arbitration is to avoid litigation.
>
> In furtherance of this objective, our legislature enacted the Arbitration and Awards Statute, HRS Ch. 658.
>
> This court has decided to confine judicial review of awards under the statute to the strictest possible limits.
>
> We believe an extensive judicial review of arbitration awards would frustrate the intent of the parties to avoid litigation and would also nullify the legislative objective in the enactment of the Arbitration and Awards statute.

*Id.* at 225–26, 847 P.2d at 659–60 (quoting *Mars Constructors, Inc. v. Tropical Enters., Ltd.*, 51 Haw. 332, 334–35, 460 P.2d 317, 318–19 (1969)) (brackets, ellipses points and block quote format omitted). This court further noted that its holding was based on the prin-

ciple that "allow[ing] a party a second chance at litigation after it has conspicuously failed to comply with the specific statutory provisions available for challenging an award would frustrate the clear policy of facilitating the legislative objectives behind the arbitration and award statute." *Id.* at 227, 847 P.2d at 660. Therefore, PBS would be entitled to appeal the circuit court's March 10, 2003 order only if its motion to vacate was timely filed.

#### a. *whether PBS's motion to vacate was timely*

■ As previously noted, HRS § 658–11 requires a party seeking the vacation of an arbitration award to file notice of such motion "within ten days after the award is made and served." PBS contends that the ten-day provision does not begin to run until an arbitration award is made and served in compliance with the statutory requirements under HRS § 658–8. Schmidt argues that the award did conform to the requirements under HRS § 658–8 and that PBS's motion to vacate was, therefore, untimely. Schmidt argues in the alternative that an award need not comply with all the statutory requirements in order to be final.

HRS § 658–8 states that an award "shall be in writing and *acknowledged or proved in like manner as a deed for the conveyance of real estate,* and delivered to one of the parties or the party's attorney." (Emphasis added.) Here, the award was signed by the arbitrator and sent by ordinary mail. It is undisputed that the award was not "acknowledged" at the time it was first issued. Thus, the question is whether it was "proved in like manner as a deed."

HRS § 502–50(a) (1993) describes the manner of proving an unacknowledged deed for recordation in the bureau of conveyances:

> Except as otherwise provided, to entitle any conveyance or other instrument to be recorded, it shall be acknowledged by the person or persons executing the same, before ... a notary public of the State. If ... for any reason neither proper certification nor a new acknowledgment can be secured, the instrument may be entered as

of record on proof of its execution *by a subscribing witness thereto before the judge . . . .* If all the subscribing witnesses to the conveyance or other instrument are dead or out of the State, *the same may be proved before any court in the State by proving the handwriting of the person executing the same and any subscribing witness. . . .*

(Emphases added). The language above indicates that the time for proving a deed occurs *at the time the deed is recorded.* As indicated in *Markham v. Markham,* 80 Hawai'i 274, 909 P.2d 602 (App.1996), an unacknowledged deed is valid as between the parties and affects only its ability to be recorded. In *Markham,* the Intermediate Court of Appeals (ICA) held such an award valid between the parties and set forth the purpose behind the acknowledgment requirement, noting that:

> Each instrument presented for recording must contain a certificate of acknowledgment verifying the identity of the person executing the instrument. HRS § 502-41 (1993). *"The main object of a certificate of acknowledgment is to guard the public against false impersonation and to make sure that the grantor executed the deed.* . . . Executing a deed implies that it is executed for the uses and purposes it expresses." *Hawaiian Trust & Inv. Co. v. Barton,* 16 Haw. 294, 300 (1904)
>
> . . . .
>
> It has also been held that even without recordation, " '[a] deed apparently valid upon its face carries with it a presumption of validity' " as between the parties to a deed. *Chun Chew Pang v. Chun Chew Kee,* 49 Haw. 62, 71, 412 P.2d 326, 332 (1966) (quoting *McElroy v. Calhoun,* 177 Okla. 38, 57 P.2d 827, 828 (1936)). "Even if the deed had no acknowledgment, or its equivalent, at all, it would still be good between the parties. As between the parties acknowledgment of a deed is not necessary." *Meheula v. Pioneer Mill Co.,* 17 Haw. 56, 58 (1905) (citing *Laanui v. Puohu,* 2 Haw. 161 (1859)). *See also In re Nelson,* 26 Haw. 809, 820 (1923); *Aiau v. Kupau,* 4 Haw. 384, 385 (1881) (holding

that recording is notice to one bound to search the record).

*Id.* at 281–82, 909 P.2d at 609–10 (some brackets omitted) (emphasis added). Thus, an award need not be acknowledged to be valid and may be proved at the time of confirmation "in like manner as a deed." An unacknowledged award is, therefore, valid and not a "nullity" for purposes of triggering the time to file a motion to vacate the award.

Here, the Award was in writing and signed by the arbitrator at the time it was issued on November 25, 2003. Moreover, PBS never questioned the authenticity of the Award or the arbitrator's signature upon it. Therefore, the lack of an acknowledgment did not affect the validity of the Award as between the parties and did not affect the ten day time period in which PBS was required to file its motion to vacate the award.

Even assuming *arguendo* that an unacknowledged award is not in final form, the relevant case law supports the conclusion that such a defect is not fatal to the award. Although PBS cites to *Ockrant v. Railway Supply and Manufacturing Co.,* 160 N.E.2d 435 (Ohio Com.Pl. 1959), and *Goeller v. Liberty Mutual Insurance Co.,* 523 Pa. 541, 568 A.2d 176 (1990), in which those courts held an award invalid for failure to strictly comply with the formal statutory requirements, such cases are distinguishable.

In *Ockrant,* the Ohio Court of Common Pleas held that it did not have jurisdiction to confirm an arbitration award because the applicable statute required, *inter alia,* that an award "must designate the county in which it was made," 160 N.E.2d at 435, and the award did not so state. However, nine years later in *Prentice Funeral Home Co. v. Local No. 821 International Union of Operating Engineers,* 16 Ohio App.2d 29, 241 N.E.2d 285 (1968), the Court of Appeals of Ohio confirmed an award with the identical defect—failure to designate the county in which the award was made—because a letter attached to the award had indicated the requisite information. *Id.* at 287–88. In *Prentice Funeral Home,* the court expressly rejected *Ockrant* as authority.

In *Goeller,* the Supreme Court of Pennsylvania declared that an award that was signed

by only one of the two arbitrators joining the award, rather than both as required by the applicable statute, was a "nullity." *Id.* at 545, 568 A.2d 176. However, the court went on to hold that there was a more substantive reason that the award was a nullity because one of the arbitrators was "denied his opportunity to deliberate," in contravention of the principle that, "[w]hen an arbitrator ... is denied access to the deliberations of the other arbitrators, their decision is not a decision." *Id.* Moreover, the Court of Appeals of Oregon addressed a similar award in *Tenderella v. Kaiser Permanente,* 911 P.2d 360 (Or.Ct.App.1996), that was not signed by all the joining arbitrators and held that the defect did not render the award a nullity, noting that, in *Goeller,* "[t]he [Pennsylvania Supreme Court] treated the failure to allow full participation of all arbitrators as a more fundamental defect in the award than the missing signature." *Id.* at 362 n. 1. In reaching its decision, the court reasoned that:

> [R]eversal is not required under the circumstances of this case. Here, there is no question that the arbitrators held a hearing, considered the evidence, and reached a decision. There is no question that the 1992 [improperly signed decision, award, and additional findings] accurately state their decision. Neither the statute nor, so far as we are aware, the arbitration agreement establishes any time period within which the arbitrators must make their decision. Plaintiffs, in fact, knew what the decision was shortly after the arbitrators reached it; any delay in executing a formal award has not prejudiced them....
>
> ....
>
> The arbitrators, however, have already corrected the award by their affidavits to the court in response to plaintiffs' exceptions. That correction was before the court (even assuming that it was not formally "filed") when it ruled on the exceptions. There is, thus, no purpose in a remand to correct a technical error that has already been corrected. Whether the trial court based its ruling on the 1992 documents or on the 1994 [properly signed copy of the award] does not affect our decision; the record shows that the arbitrators have made a proper award and that

the award supports the trial court's judgment.

*Id.* at 362 (footnote omitted).

The two cases cited by PBS involved the strict application of the formal requirements of an award. However, the statutes in *Ockrant* and *Goeller* did not provide an alternative means of satisfying such a requirement, whereas, in the instant case, *either* acknowledgment *or* proof is permitted. Moreover, as indicated, other courts have declined such strict application of formal requirements. Although this court has not yet ruled directly on the instant issues, this court's ruling in *Brennan v. Stewarts' Pharmacies, Ltd.,* 59 Haw. 207, 579 P.2d 673 (1978), coupled with the United States District Court for the District of Hawaii's application of that case in *Brown v. Hyatt Corp.,* 128 F.Supp.2d 697 (D.Haw.2000), seem to support the elevation of substance over form in upholding the validity of arbitration awards.

In *Brennan,* this court declined to address the necessity of formal acknowledgments, and instead focused on the substantive requirement of finality of the arbitrator's decision. In that case, this court determined that an unacknowledged award was not a final award because the conduct of the arbitration panel's chairman "led [appellant] to believe that the arbitration in question was not [final]" until the issuance of a subsequent award. 59 Haw. at 222, 579 P.2d 673 at 681. *Brennan* involved a dispute over the lease rents for a shopping center. After a hearing and discussions by the three-member arbitration panel, the chairman of the panel drafted a memorandum with which one other arbitrator concurred and signed. The third arbitrator, however, wrote a concurrence to the decision, noting that he disagreed with the memorandum but deferred to the majority *Id.* at 218, 579 P.2d at 680. Thereafter, the chairman did not send a copy of the memorandum of award to either party to the arbitration, but sent it to the property manager and did not include a copy of the concurrence. *Id.* Subsequently, the chairman met with the shopping center's managing partner and informed him of the conclusion reached by the panel. The appellant alleged

that the chairman then took the following actions: (1) in response to the manager's disagreement with the memorandum, the chairman stated that "the matter was not final and no decision had been made"; (2) he held a meeting with one of the other arbitrators and representatives of the parties to discuss the interpretation of the lease; (3) at the parties' suggestion, he met with an impartial attorney to discuss the lease interpretation; (4) he later stated that he had decided to reconvene the arbitration panel; and (5) he signed a final award sent by one of the parties with a notice that the party would thereafter move to confirm the award. *Id.* at 219–21, 579 P.2d at 680–81. In affirming the trial court's ruling, this court stated that:

> The record contains sufficient evidence in support of the trial court's finding that the conduct of [the panel chairman] led [appellant] to believe that the arbitration in question was not finalized until the May award.

> The issue, therefore, is not whether formal acknowledgments are necessary or not ... though it is obvious that the January award did not technically comply with the provisions of HRS § 658–8.... The question herein which was determined by the trial court is whether the arbitrators had concluded their consideration of the issue submitted to them and reached a resolve by the memorandum of award of January or by the arbitration award of May.

*Id.* at 222, 579 P.2d at 681 (footnote omitted). Concluding that a majority of the arbitrators exceeded their powers and failed to decide a question submitted to them and that the concurring arbitrator failed the impartiality requirement within the meaning of HRS § 658–9, this court affirmed the trial court's order vacating the arbitration award. *Id.* at 223, 579 P.2d at 682.

As previously mentioned, the United States District Court for the District of Hawai'i relied on *Brennan* in *Brown*. The district court's ruling in *Brown* is relevant to this discussion inasmuch as it directly addressed the validity and effect of an unacknowledged award. In that case, as in the instant case, the plaintiffs claimed that the ten-day period to file a motion to vacate had

not started to run because the arbitration award did not conform to the requirements of acknowledgment and delivery under HRS § 658–8. *Id.* at 701. The district court disagreed, stating that:

> Plaintiffs' claim that the ten day period has not yet started to run because the arbitration award does not conform to the requirements of HRS § 658–8 is meritless.... Defendant's counsel[ ] stated in the declaration he attached to the opposition that he received the arbitration award on September 28, 2000, its date of issuance. Moreover, ... Plaintiffs' counsel[ ] attached a copy of the arbitration agreement ... and in his declaration wrote "Attached hereto as Exhibit 'A' is a true and correct copy of the arbitration award." The award is signed by all three arbitrators and, unlike the *Brennan v. Stewarts' Pharmacies, Ltd.*, case, there does not appear to have been any confusion or impropriety about when the award was issued. *See* [*Brennan*, 59 Haw. at 217–221, 579 P.2d at 679–681]. It is true that the signatures are not notarized. Yet, even in *Brennan*, the Supreme Court of Hawai'i downplayed the requirement of an acknowledgment. The *Brennan* court stated that "the issue ... is not whether formal acknowledgments are necessary or not," but instead is, "whether the arbitrators had concluded their consideration of the issue submitted to them and reached a resolve by the memorandum of award." *Id.* at 681. There is no serious contention that the arbitrators have not concluded their consideration of the issues. The [c]ourt finds that the award of September 28, 2000 was sufficient under *Brennan*.

*Id.* Although the federal court dismissed the formal requirements under HRS § 658–8 pursuant to this court's holding in *Brennan*, it acknowledged that the holding in that case relied on an alternative ground other than technical noncompliance with the statutory requirements of an award.

Although *Brennan* did not resolve the instant issue, the proper focus of inquiry under *Brennan* is whether an award was final; not whether formal acknowledgment had occurred. Moreover, the statutory language

under HRS § 658–8 and relevant case law indicate that formal acknowledgment or proof does not affect an award's validity as between the parties and may take place at any time prior to or at confirmation. Furthermore, its subsequent acknowledgment cured the defect prior to confirmation. Thus, the proper focus of inquiry under *Brennan* is whether the award was final.

### b. *whether the November 25, 2002 award was final*

▮ In the instant case, PBS's counsel compared PBS's situation to *Brennan* at the hearing on its motion to vacate the Award, contending that the arbitrator's letter accompanying the Award gave him the impression that the Award was not final. In the letter, the arbitrator noted, "[e]nclosed is my decision and award in this matter. I have not declared before a notary that this is my decision. I understand that is no longer required. If you need a notary, please advise." PBS's counsel argued that the arbitrator's letter left him confused, similar to the parties in *Brennan*, as to when the award became final, stating:

> [W]hen I received that award, I focused immediately on the cover letter which said what it said. I understand this isn't required. Acknowledgment isn't required. But if you want acknowledgment, just tell me.
>
> Not only acknowledgment is required, and, I fully expected that they would come—[Schmidt's] attorney would come immediately to the arbitrator and say you got to get this acknowledged, Your Honor, it's just so unfair to have the confusion, to have any doubt as to when this award is— is subject to the ten days running and hold that confusion against a person.... I read that letter. I said to myself, of course, it's necessary. That will have to be done. When that's done, the time [to file a motion to vacate] will start to run.

PBS's counsel also declared that, "I took no action pending the Arbitrator's providing the acknowledgement [sic] he had offered in his letter."

As previously stated, under *Brennan*, an arbitration award is final when the arbitrator

has concluded his consideration of the issues and reached a resolution. 59 Haw. at 221, 579 P.2d at 681. Additionally,

> [a]lthough there is no requirement that the award be self-executing, and although "it is not faulty because litigation may ensue in enforcing it," 6 C.J.S. *Arbitration* § 111b (1975), it should be "sufficiently definite that only ministerial acts of the parties are needed to carry it into effect," *Mercury Oil Refining Co. v. Oil Workers International Union*, 187 F.2d 980, 982 (10th Cir. 1951); *see also* 6 C.J.S. *Arbitration* § 115 (1975), and "clear enough to indicate unequivocally what each party is required to do." Martin Domke, *Domke on Commercial Arbitration* § 28:04 (Rev. Ed.1984) (Domke).

*Strickland v. Seiple*, 5 Haw.App. 168, 171, 680 P.2d 533, 535 (1984). If the award is " 'incomplete, uncertain, and indefinite it cannot be sustained.' " *Id.* at 173, 680 P.2d at 536 (quoting 5 Am.Jur.2d *Arbitration and Award* § 141 at 622 (1962)).

Unlike the situation in *Brennan*, the facts here do not support PBS's contention that the arbitrator's conduct was misleading. Rather, the arbitrator's letter clearly states that he had concluded his consideration of the issues and reached a decision. He also included a bill for his services and stated that, in his understanding, no further action would be necessary. According to the letter, any further ministerial action to be taken would only be *at the request* of the parties. Based on the foregoing, it cannot be said that the arbitrator's statement that he would acknowledge the Award at the request of the parties left any doubt that the issues had been finally concluded. Therefore, the Award was final.

### c. *when the Award was served on PBS thereby triggering the time limit for a motion to vacate*

▮ PBS contends that the Award was never "delivered" within the meaning of the statute because it was not delivered "personally or by registered or certified mail," pursuant to the requirements of HRS § 658–8. Schmidt contends that the statute does not require such delivery and that the original

Award was in fact delivered to each of the parties.

HRS § 658-8 states that, *"[t]he award* shall be ... delivered to *one of the parties* or the party's attorney. *A copy* of the award shall be served by the arbitrators on *each of the other parties* to the arbitration, personally or by registered or certified mail." (Emphases added.) Based on its plain language, the statute clearly contemplates that only one original of the award is prepared and served upon one of the parties; all other parties are served with a copy of the original award. The statute also clearly states that the arbitrator may serve *copies* of the award "personally or by registered or certified mail." The statute, however, states only that "[t]he award [ (*i.e.,* the original) ] shall be ... *delivered* to one of the parties or the party's attorney." Thus, if this court were to follow the circuit court's ruling that ordinary mailing constitutes "delivery" under the statute, then the requirements for service of the original would be less stringent than the requirements for service of a copy, which is absurd. *See AOAO of Maalaea Kai, Inc. v. Stillson,* 108 Hawai'i 2, 27, 116 P.3d 644, 669 (2005) (applying the rule that, "because the legislature is presumed not to intend an absurd result, legislation should be construed to avoid, if possible, inconsistency, contradiction, and illogicality") (citation omitted)). Consequently, the reference to "delivered" can only mean "personal or hand delivery" of the original of the award.

Here, the record does not indicate whether the Award that was mailed to PBS was an original or a copy. In either case, ordinary mailing would not have satisfied the statutory service requirements. Nevertheless, the purpose of the statute—that is, to ensure that the parties actually receive the arbitrator's written decision—was met. At no time did PBS's counsel claim that he did not receive the arbitrator's written decision. In fact, he confirmed his receipt thereof at the February 13, 2003 hearing, as evinced by the following portion of the transcript:

[PBS's Counsel]: Okay. If the copy, I mean if the award, the original of the award, presumably, the original, if the original award is delivered to me,—

THE COURT: Which it was.

[PBS's Counsel]: No, it wasn't. *It was mailed.*

THE COURT: All right.

Moreover, as previously noted, PBS's counsel declared that, when he received the unacknowledged award, he did not take any action. Thus, the record indicates that PBS and its counsel did, in fact, receive either the original or a copy of the arbitrator's written award; however, the *date* upon which service was perfected is unclear.

As previously indicated, Schmidt's counsel indicated that he received the Award on November 26, 2002, the day after it was issued. Thus, the circuit court assumed that PBS received the Award on the same day as Schmidt and concluded that the ten-day statutory time to file a motion to vacate expired on December 9, 2002.[9] The circuit court ruled that PBS's motion, filed on January 22, 2003, was untimely.

Even assuming *arguendo* that PBS never received the Award through ordinary mail service, it is undisputed that PBS received a copy of the Award, at the latest, on December 9, 2002, as evinced by the certificate of service attached to Schmidt's motion to confirm, which was served on that date, and to which a "true and correct" copy of the Award was attached as Exhibit "B." Thus, even if the circuit court had given the benefit of the doubt to PBS and utilized December 9, 2002 as the triggering date, PBS's motion would had to have been filed by December 19, 2002; PBS did not file its motion to vacate until over one month later on January 22, 2003. Therefore, as the facts illustrate, PBS did not take appropriate action to preserve its right to appeal. Had PBS's counsel immediately moved to vacate the Award or requested that the arbitrator acknowledge the Award rather than waiting for Schmidt to do so, PBS could have preserved its right to move to vacate the Award. Instead, PBS decided to take *no*

9. It should be noted that the circuit court, for reasons not explained, excluded weekends from the ten-day calculation. However, even if ex- cluding weekends was in error, such error was beneficial to PBS inasmuch as it provided additional time.

action following receipt of the Award even though it assumed that acknowledgment was required and did not question the authenticity of the arbitrator's signature on the Award. Accordingly, we hold that the circuit court did not err in concluding that PBS's motion to vacate filed on January 22, 2003, was untimely, and that this court is without jurisdiction to review the Award.

## IV. CONCLUSION

Based on the foregoing, we affirm the circuit court's March 10, 2003 Order.

