264 P.3d 655

In the Matter of the Arbitration Between UNITED PUBLIC WORKERS, AFSCME, Local 646, AFL–CIO, Union–Appellee,

v.

COUNTY OF HAWAI'I–HOLIDAY PAY (2003–022B), Employer–Appellant.

In the Matter of the Arbitration Between United Public Workers, AFSCME, Local 646, AFL–CIO, Union–Appellant,

v.

County of Hawai'i–Holiday Pay (2003–022B), Employer–Appellee.

Nos. 30116, 30421.

Intermediate Court of Appeals of Hawai'i.

Sept. 29, 2011.

Diane A. Noda and Joseph K. Kamelamela, Deputies Corporation Counsel, County of Hawai'i, on the briefs, for County of Hawai'i.

Herbert R. Takahashi and Rebecca L. Covert (Takahashi and Covert), on the briefs, for United Public Workers, AFSCME, Local 646, AFL–CIO.

FOLEY, Presiding J., and LEONARD, J.; GINOZA, J., concurring separately.

Opinion of the court by FOLEY, Presiding J.

This consolidated appeal arises out of an arbitration of an employer-employee labor dispute over holiday pay and benefits.

In appeal No. 30116, Employer County of Hawaii (County or Employer) appeals from the Judgment (Judgment) filed on September 16, 2009 in the Circuit Court of the First Circuit [1] (First Circuit Court). The First Circuit Court entered judgment in favor of Union United Public Workers, AFSCME, Local 646, AFL–CIO (UPW or Employee) and against County pursuant to the "Order Granting Union's Motion to Confirm Arbitration Award Dated July 9, 2009 as Modified on July 29, 2009," filed September 16, 2009.

On appeal, County contends the First Circuit Court erred when it

(1) found the First Circuit Court, rather than the Circuit Court of the Third Circuit

---

1. The Honorable Sabrina S. McKenna presided.

(Third Circuit Court), to be the proper venue to hear UPW's July 17, 2009 "Motion to Confirm and to Modify and Correct Award by Arbitrator Michael Marr Dated July 9, 2009" (Motion to Confirm);

(2) confirmed the Final Arbitration Award (Arbitration Award) because the award violated public policy under Hawaii Revised Statutes (HRS) § 89–9(d)(7) (Supp. 2003); and

(3) confirmed the Arbitration Award because Arbitrator Michael Marr (the Arbitrator) exceeded his authority by ruling on the issue of collateral estoppel.

In appeal No. 30421, UPW appeals from the First Circuit Court's March 22, 2010 post-judgment "Order Granting Employer County of Hawaii's Motion to Stay Enforcement of Judgment Pending Appeal Filed on January 7, 2010" (Order Granting Motion to Stay).

UPW contends that

(1) in a case involving or growing out of a labor dispute, a court lacks jurisdiction to stay enforcement of an arbitral award;

(2) under HRS § 380–4(3) (1993), a court lacks jurisdiction to withhold monetary payments to persons involved in a labor dispute;

(3) before a court has jurisdiction to issue an injunctive order under HRS Chapter 380, the court must meet certain procedural requirements; and

(4) judicial relief is unavailable under HRS § 380–8 (1993) to a party who seeks to undermine the arbitration process.

## I.

### A. ARBITRATION PROCEEDINGS

UPW is the collective bargaining representative for collective bargaining Unit 1 employees (Unit 1 employees). The July 1, 2003 Collective Bargaining Agreement (CBA) for Unit 1 employees requires the parties to resolve contract disputes via a grievance process culminating in arbitration of unresolved disputes. On August 22, 2003, UPW filed a class grievance on behalf of Unit 1 employees, alleging that County failed to pay holiday pay and benefits to employees who were on leaves of absence without pay. County denied the grievance, UPW submitted the case to arbitration, and the parties mutually selected the Arbitrator.

On March 24, 2008, UPW filed a Motion for Summary Disposition. The Arbitrator heard the motion on July 18, 2008 and on August 12, 2008 issued an "Order Granting in Part and Denying in Part [UPW's] Motion for Summary Disposition Filed on March 24, 2008," as corrected by order dated August 13, 2008. On January 30, 2009, the Arbitrator heard UPW's two motions: one for discovery sanctions, attorney's fees, and costs of discovery and one for a final arbitration award, back pay with interest, a cease and desist order, and attorney's fees. On June 1, 2009, the Arbitrator held a hearing on the parties' positions regarding holiday pay for certain classes of employees. On July 9, 2009, the Arbitrator issued the Arbitration Award in favor of UPW and against County.

### B. FIRST CIRCUIT COURT AND APPELLATE PROCEEDINGS

UPW filed the Motion to Confirm the Arbitration Award on July 17, 2009. On September 16, 2009, pursuant to the "Order Granting Union's Motion to Confirm Arbitration Award Dated July 9, 2009 as Modified on July 29, 2009," the First Circuit Court filed the Judgment, entering judgment in favor of UPW and against County. County filed a notice of appeal from the Judgment on October 12, 2009. County's appeal was docketed as No. 30116. On December 28, 2009, UPW filed a motion to dismiss the appeal for lack of appellate jurisdiction, which motion this court denied on March 15, 2010.

On January 7, 2010, County filed a post-judgment "Motion to Stay Enforcement of Judgment Pending Appeal" (Motion to Stay). On March 22, 2010, the First Circuit Court entered the Order Granting Motion to Stay. UPW filed a notice of appeal on April 5, 2010 from the Order Granting Motion to Stay. UPW's appeal was docketed as No. 30421.

This court filed an Order of Consolidation on December 23, 2010, consolidating appeal Nos. 30116 and 30421 under No. 30116 for disposition.

## II.

### A. ARBITRATION AWARD

■ The appellate court reviews "the circuit court's ruling on an arbitration award *de novo* " and is also "mindful that the circuit court's review of arbitral awards must be extremely narrow and exceedingly deferential." *Tatibouet v. Ellsworth*, 99 Hawai'i 226, 233, 54 P.3d 397, 404 (2002) (internal quotation marks, citation, and brackets omitted).

The appellate court's review of arbitration awards is guided by the following principles:

> It is well settled that because of the legislative policy to encourage arbitration and thereby discourage litigation, judicial review of an arbitration award is confined to the strictest possible limits. As such, a court has no business weighing the merits of the arbitration award. Indeed, the legislature has mandated that a court may vacate an arbitration award only on the four grounds specified in HRS § 658–9,[2] and may modify or correct an award only on the three grounds specified in HRS § 658–10. Therefore, HRS § 658–8 contemplates a judicial confirmation of the award issued by the arbitrator, unless the award is vacated, modified, or corrected in accord with HRS §§ 658–9 and 658–10.
>
> Based upon the policy limiting judicial review of arbitration awards, [the Hawai'i Supreme Court] has held that parties who arbitrate a dispute assume all the hazards of the arbitration process including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact. Where arbitration is made in good faith, parties are not permitted to prove that an arbitrator[ ] erred as to the law or the facts of the case.

*Id.* (internal quotation marks, citations, ellipses, and brackets in original omitted) (quoting *Wayland Lum Constr., Inc. v. Kaneshige*, 90 Hawai'i 417, 421, 978 P.2d 855, 859 (1999)).

### B. SCOPE OF ARBITRATOR'S AUTHORITY

■ "The scope of an arbitrator's authority is determined by agreement of the parties. An arbitrator must act within the scope of the authority conferred upon him by the parties and cannot exceed his power by deciding matters not submitted." *Clawson v. Habilitat, Inc.*, 71 Haw. 76, 78, 783 P.2d 1230, 1231 (1989). "[W]here an arbitrator has exceeded his or her powers by deciding matters not submitted, [the Hawai'i Supreme Court] has held, pursuant to HRS § 658–9(4),[3] that the resulting arbitration award must be vacated." *Tatibouet*, 99 Hawai'i at 235, 54 P.3d at 406.

> When the parties include an arbitration clause in their collective bargaining agreement, they choose to have disputes concerning constructions of the contract resolved by an arbitrator. Unless the arbitral decision does not draw its essence from the collective bargaining agreement, a court is bound to enforce the award and is not entitled to review the merits of the contract dispute. This remains so even when the basis for the arbitrator's decision may be ambiguous.

*W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983) (internal quotation marks, citations, and brackets omitted).

> Because the authority of arbitrators is a subject of collective bargaining, just as is any other contractual provision, the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator. [The second Arbitrator's] conclusions that [the first Arbitrator] acted outside his jurisdiction and that this deprived [the first Arbitrator's] award of precedential force under the contract draw their "essence" from the provisions of the collective bar-

---

2. HRS Chapter 658 was repealed in 2001 when the Hawai'i Legislature adopted Chapter 658A, based on the Uniform Arbitration Act. 2001 Haw. Sess. Laws Act 265, § 1 at 810 & § 5 at 820. The former § 658–9 (Vacating Award) is now § 658A–23, § 658–8 (Award and Confirming

Award) was split into § 658A–19 and § 658A–22, and § 658–10 (Modifying or Correcting Award) is now § 658A–24.

3. Now HRS § 658A–23(4). *See supra* note 2.

gaining agreement. Regardless of what our view might be of the correctness of [the second Arbitrator's] contractual interpretation, the Company and the Union bargained for that interpretation. A federal court may not second-guess it.

*Id.* at 765, 103 S.Ct. at 2183.

## C. PUBLIC POLICY

 A court may not enforce any contract "that is contrary to public policy." *Id.* at 766, 103 S.Ct. at 2183. It follows that "[i]f the contract as interpreted [by an arbitrator] violates some explicit public policy, [the courts] are obliged to refrain from enforcing it." *Id.* Thus, the United States Supreme Court has recognized a public policy exception to the general deference given arbitration awards. *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 42–43, 108 S.Ct. 364, 373–74, 98 L.Ed.2d 286 (1987) (to refuse to enforce an arbitration award, the alleged violation of public policy must be clearly shown).

> [T]he public policy exception requires a court to determine that (1) the award would violate some explicit public policy that is well defined and dominant, and that is ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests, and (2) the violation of the public policy is clearly shown. Hence, a refusal to enforce an arbitration award must rest on more than speculation or assumption.

*Inlandboatmen's Union of the Pac., Hawai'i Region, Marine Div. of Int'l Longshoremen's & Warehousemen's Union v. Sause Bros., Inc.*, 77 Hawai'i 187, 193–94, 881 P.2d 1255, 1261–62 (App.1994) (internal quotation marks, citations, ellipsis, and brackets in original omitted).

## D. SUBJECT MATTER JURISDICTION

 "Whether a court possesses subject matter jurisdiction is a question of law reviewable *de novo*." *Hawai'i Mgmt. Alliance Ass'n v. Ins. Comm'r*, 106 Hawai'i 21, 26, 100 P.3d 952, 957 (2004) (internal quotation marks and citation omitted). "If a court lacks jurisdiction over the subject matter of a proceeding, any judgment rendered in that proceeding is invalid, therefore, such a question is valid at any stage of the case." *Int'l Bhd. of Painters & Allied Trades, Drywall Tapers, Finishers & Allied Workers Local Union 1944, AFL–CIO v. Befitel*, 104 Hawai'i 275, 281, 88 P.3d 647, 653 (2004) (internal quotation marks, citation, and brackets omitted).

## E. STATUTORY INTERPRETATION

"Questions of statutory interpretation are questions of law reviewable *de novo*." *Gump v. Wal–Mart Stores, Inc.*, 93 Hawai'i 417, 420, 5 P.3d 407, 410 (2000). In our review of questions of statutory interpretation, this court follows certain well-established principles, as follows:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

*Awakuni v. Awana*, 115 Hawai'i 126, 133, 165 P.3d 1027, 1034 (2007)[.]

*Hawaii Gov't Employees Ass'n, AFSCME Local 152, AFL–CIO v. Lingle*, 124 Hawai'i 197, 201–02, 239 P.3d 1, 5–6 (2010).

## III.

### A. THE FIRST CIRCUIT COURT[4] DID NOT ERR WHEN IT FOUND THAT IT WAS THE PROPER VENUE FOR THE PROCEEDING TO CONFIRM THE ARBITRATION AWARD.

County contends that pursuant to HRS § 658A–27 (Supp.2010),[5] the Third Circuit

Court,[6] not the First Circuit Court, was the proper venue for the court proceeding to confirm the Arbitration Award. County argues that the CBA is silent on where an arbitration hearing should be held, County arbitration hearings on the merits are always held within the third judicial circuit, and County would never have consented to move an evidentiary hearing outside the third judicial circuit because most of the witnesses lived in that circuit.

County also contends that an arbitration hearing on the merits was never held and, therefore, under HRS § 658A–27, the proper venue was "any circuit in which an adverse party resides or has a place of business." County reasons that because it was the adverse party with its place of business in the third judicial circuit, the Third Circuit Court was the proper venue. Lastly, County claims the First Circuit Court had previously ruled that the Third Circuit Court was the proper venue to hear this case.

■ Section 15.18c of the CBA provides that "[t]he date, time and place of the hearing fixed by the Arbitrator shall be within twenty (20) calendar days from the selection of the Arbitrator." In its opening brief, County concedes that the Arbitrator has the authority to fix the date, time, and place of the hearing. Therefore, County's contention that the CBA was silent on where the arbitration hearing should be held is without merit.

■ County next argues that only pre-arbitration hearings were held, no arbitration hearing on the merits was conducted, and, thus, there was no arbitration.

Pursuant to HRS § 658A–27, when an arbitration hearing has been held, any application for judicial relief is made in the court where the arbitration hearing was held; "[o]therwise, the motion may be made in the court of any circuit in which an adverse party resides or has a place of business."

Under well-established rules of statutory construction,

> where there is no ambiguity in the language of a statute, and the literal application of the language would not produce an absurd or unjust result, clearly inconsistent with the purposes and policies of the statute, there is no room for judicial construction and interpretation, and the statute must be given effect according to its plain and obvious meaning.

*Reefshare, Ltd. v. Nagata,* 70 Haw. 93, 99, 762 P.2d 169, 173 (1988) (citation and quotation marks omitted).

*United Pub. Workers, AFSCME, Local 646, AFL–CIO v. Hanneman,* 106 Hawai'i 359, 365, 105 P.3d 236, 242 (2005).

County reasons that because there was no evidentiary hearing on the merits, there was no arbitration. County cites to no authority for the proposition that an arbitration hearing only occurs when there is a hearing on the merits.

■ Arbitration is a method of dispute resolution entered into before a neutral third party agreed to by the disputing parties and whose decision is binding. *Black's Law Dictionary* 119 (9th ed. 2009). The CBA provided that the arbitrator determines the issues

---

4. This court takes judicial notice that the first judicial circuit is comprised of, inter alia, the island of Oahu. HRS § 603–1(1) (Supp.2010).

5. HRS § 658A–27 provides:

> **HRS § 658A–27 Venue.** A motion pursuant to section 658A–5 shall be made in the court of the circuit in which the agreement to arbitrate specifies the arbitration hearing is to be held or, if the hearing has been held, in the court of the circuit in which it was held. Otherwise,

the motion may be made in the court of any circuit in which an adverse party resides or has a place of business or, if no adverse party has a residence or place of business in this State, in the court of any circuit in this State. All subsequent motions shall be made in the court hearing the initial motion unless the court otherwise directs.

6. This court takes judicial notice that the third judicial circuit is comprised of the island of Hawai'i. HRS § 603–1(3) (Supp.2010).

to be resolved and conducts the hearing. CBA 15.18b & c. In the instant case, the parties mutually selected the Arbitrator. Following a telephone conference on November 26, 2007 with the parties, the Arbitrator faxed a letter to the parties identifying the agreements and stipulations made during the telephone conference. According to the letter, UPW agreed to file its motion for summary disposition on the finality of the 2003 Parnell[7] and 2007 Ikeda[8] awards on the issue of holiday pay by March 31, 200[8], and County agreed to file its memorandum in opposition to UPW's motion for summary disposition no later than April 30, 2008.

County was aware from the beginning of arbitration that the first, and perhaps only, issue to be arbitrated was whether County was estopped from arguing on the merits regarding holiday pay. County did not object on the basis of arbitrability or on any other basis, participated in two more telephone conferences, and submitted an opposition memorandum on the issue of collateral estoppel.

The Arbitrator set the hearing regarding UPW's motion for summary disposition for May 28, 2008 at the UPW Union Hall (UPW Hall) in Honolulu. On May 8, 2008, County asked for a continuance on the motion and, on May 30, 2008, confirmed a new date of July 18, 2008 for the hearing on UPW's motion.

The motion for summary disposition came on for hearing on July 18, 2008 at the UPW Hall with both parties and the Arbitrator present. On January 30, 2009, the Arbitrator conducted a hearing via teleconference regarding a final arbitration award and motions for discovery sanctions. On June 1, 2009, the Arbitrator held a third hearing via telephone conference with UPW and County on holiday pay for certain classes of employees. Based on the hearings of January 30, 2009 and June 1, 2009, the Arbitrator issued the Arbitration Award on July 9, 2009.

UPW then filed the Motion to Confirm in the First Circuit Court. It was only at this point County contended, in its opposition memorandum to the motion, that because the merits had not been addressed, arbitration had not been held.

The facts indicate the Arbitrator fixed the place of the hearing, the arbitration was held in Honolulu over the course of three dates, County participated in person and by telephone, and, in the end, the Arbitration Award was issued based on the arbitration hearing.

County further argues that the First Circuit Court had previously ruled that the Third Circuit Court was the proper venue to hear this case. County misstates the First Circuit Court's ruling.

On December 22, 2008, the First Circuit Court (Judge McKenna presiding) heard a motion by UPW to consolidate another holiday pay arbitration case, Special Proceeding No. 08–1–0432 (SP No. 08–1–0432), with the instant case. The First Circuit Court determined that venue in the first circuit for the motion was improper because UPW was not the adverse party and ordered the case transferred to the Third Circuit Court. Notwithstanding that order, on January 13, 2009, in the First Circuit Court, the parties filed a stipulation to dismiss SP No. 08–1–0432 without prejudice.

On August 17, 2009, Judge McKenna heard UPW's Motion to Confirm. Judge McKenna stated that if SP No. 08–1–0432 were still pending in the Third Circuit Court, then the Motion to Confirm would have been properly heard in the Third Circuit Court. However, since SP No. 08–1–0432 had been dismissed, the Motion to Confirm had been filed in a new and separate action. The judge determined that the instant arbitration was properly held in Honolulu, where the Arbitrator was located. Judge McKenna likened arbitration hearings to court proceed-

7. In re Arbitration Between State of Hawaii (State), University of Hawaii, Employer, and United Public Workers, AFSCME, Local 646, AFL–CIO, Union, Re: Class Grievance Involving DENIAL OF HOLIDAY PAY (Edward J. Parnell, Arbitrator, 2003) (referred to as 2003 Parnell).

8. In re United Public Workers, AFSCME, Local 646, AFL–CIO, Union, and University of Hawaii, Employer, Grievance of Yong Mi Han (Walter Ikeda, Arbitrator, 2007) (referred to as 2007 Ikeda).

ings, where the location of the proceeding is considered to be wherever the fact finder is, even if witnesses or parties participate via telephone or video conference from another location.

We conclude the First Circuit Court did not err in finding that it was the proper venue to hear the Motion to Confirm.

## B. THE FIRST CIRCUIT COURT DID NOT ERR IN CONFIRMING THE ARBITRATION AWARD WHEN IT FOUND THE AWARD DID NOT VIOLATE PUBLIC POLICY AND THE ARBITRATOR DID NOT EXCEED HIS SCOPE OF AUTHORITY.

Whether the First Circuit Court erred in confirming the Arbitration Award is a question of law reviewable de novo. *Tatibouet,* 99 Hawai'i at 233, 54 P.3d at 404. In this court's review of the First Circuit Court's ruling, we are cognizant of the extreme deference the First Circuit Court must give to its review of the arbitration award. *Id.*

County contends the Arbitration Award violated public policy by denying County's fundamental constitutional right to due process, improperly applying collateral estoppel to the 2003 Parnell Award in contravention of the CBA grievance process as outlined in CBA Section 15, and materially altering the CBA in disregard of employees' rights under HRS Chapter 89.

 Under the fifth amendment of the United States Constitution and article 1, section 5 of the Hawai'i Constitution, a person shall not be deprived of life, liberty, or property without due process of law. Procedural due process requires a party be given notice and an opportunity to be heard. *Sandy Beach Defense Fund v. City Council of City & County of Honolulu,* 70 Haw. 361, 378, 773 P.2d 250, 261 (1989). County argues that because it was not a party to the 2003 Parnell Award, the application of collateral estoppel denied County its right to procedural due process.

 Collateral estoppel prevents the relitigation of a fact or issue that was determined in a prior case between the same parties or their privies on a different cause of action. *Bremer v. Weeks,* 104 Hawai'i 43, 54, 85 P.3d 150, 161 (2004). Historically, collateral estoppel required mutuality and privity between the parties. *Bernhard v. Bank of Am. Nat'l Trust & Savings Ass'n,* 19 Cal.2d 807, 811, 122 P.2d 892, 894 (1942). Hawai'i courts have moved away from this traditional requirement to a modern doctrine that recognizes nonmutual defensive and offensive collateral estoppel. *See Ellis v. Crockett,* 51 Haw. 45, 54–57, 451 P.2d 814, 821–23 (1969); *Morneau v. Stark Enters., Ltd.,* 56 Haw. 420, 423–24, 539 P.2d 472, 475 (1975); *In re Herbert M. Dowsett Trust,* 7 Haw.App. 640, 644–48, 791 P.2d 398, 401–04 (1990); *Bush v. Watson,* 81 Hawai'i 474, 479–81, 918 P.2d 1130, 1135–37 (1996).

 In *Dorrance v. Lee,* 90 Hawai'i 143, 976 P.2d 904 (1999), the Hawai'i Supreme Court set forth a four-factor "collateral estoppel test" to determine whether or not collateral estoppel applies.

We therefore hold that the doctrine of collateral estoppel bars relitigation of an issue where: (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication [hereinafter, the collateral estoppel test].

*Id.* at 149, 976 P.2d at 910. The party asserting collateral estoppel carries the burden of establishing that the factors have been met. *Lingle v. Hawai'i Gov't Employees Ass'n, AFSCME, Local 152, AFL–CIO,* 107 Hawai'i 178, 186, 111 P.3d 587, 595 (2005).

 In *Tradewind Ins. Co. v. Stout,* 85 Hawai'i 177, 938 P.2d 1196 (App.1997), this court considered equitable factors to ensure that the due process rights of a non-party to the prior decision were not violated when collateral estoppel was applied.

[D]ue process requires that the estopped party have an identity or community of interest with, and adequate representation by, the losing party in the first action and

reasonably expects to be bound by the prior adjudication. [*Safeco Ins. Co. of Am. v. Yon,* 118 Idaho 367, 796 P.2d 1040, 1044 (Idaho Ct.App.1990).] When applying this rule, ... various equitable factors ... must be considered:

> Whether it would be generally unfair in the second case to use the result of the first case, whether assertion of the plea of estoppel by a stranger to the judgment would create anomalous [results], whether the party adversely affected by the collateral estoppel offers a sound reason why he should not be bound by the judgment, and whether the first case was litigated strenuously or with vigor.

> *Id.* at 1045[.]

85 Hawai'i at 187–88, 938 P.2d at 1206–07 (brackets in original omitted).

In 2004, the Hawai'i Supreme Court expanded the doctrine of collateral estoppel when it issued its landmark decision in *Exotics Hawai'i–Kona, Inc. v. E.I. Dupont De Nemours & Co.,* 104 Hawai'i 358, 90 P.3d 250 (2004), affirmatively recognizing the doctrine of nonmutual offensive issue preclusion.[9] The court held:

> In sum, inasmuch as (1) we have acknowledged that "it is not necessary that the party asserting issue preclusion in the second suit was a party in the first suit," *Bremer,* 104 Hawai'i at 54, 85 P.3d at 161, (2) we find [*Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979),] and *Tradewind* to be persuasive, and (3) we believe that the use of nonmutual offensive issue preclusion will assist our courts in preventing unnecessary relitigation of issues and will promote consistency of judgments and judicial economy, we now explicitly adopt and recognize the doctrine of nonmutual offensive issue preclusion.

*Id.* at 371, 90 P.3d at 263 (brackets in original omitted). In addition to reiterating the four-factor *Dorrance* test, the *Exotics Hawai'i–Kona* court held that nonmutual offensive

"issue preclusion should be qualified or rejected when its application would contravene an overriding public policy or result in manifest injustice." 104 Hawai'i at 372, 90 P.3d at 264 (internal quotation marks and citation omitted).

In the "Order Granting in Part and Denying in Part [UPW's] Motion for Summary Disposition Filed on March 24, 2008," as corrected, the Arbitrator applied the *Dorrance* collateral estoppel test and determined the four-factor test was met. Specifically, the Arbitrator determined that (1) the issues decided in the 2003 Parnell Award were identical to the ones presented in the instant case, (2) the 2003 Parnell Award was a final judgment on the merits, (3) the issues decided were essential to the 2003 Parnell final judgment, and (4) the party against whom collateral estoppel was asserted (County) was a party or in privity with a party in the 2003 Parnell Award (the State of Hawai'i, University of Hawai'i).

■ The Arbitrator provided an extensive analysis of the fourth factor, privity, and based his finding of privity between County and the State of Hawai'i, University of Hawai'i on two principles. The first principle was the contractual relationship among the employer group members,[10] as well as with UPW, mandated by HRS Chapter 89 and established by the CBA. The Arbitrator noted that all the employer members and UPW were signatories to the CBA. Privity traditionally exists among parties to a contract. *Headwaters Inc. v. United States Forest Serv.,* 399 F.3d 1047, 1053 (9th Cir.2005).

The second principle the Arbitrator applied was the public policy exception of a pre-existing substantive legal relationship. This exception was recognized in a 2008 United States Supreme Court case addressing the split among the circuit courts regarding privity and the application of collateral estoppel. In *Taylor v. Sturgell,* 553 U.S. 880, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008), the Supreme

9. In *Exotics Hawai'i–Kona,* the Hawai'i Supreme Court used the term "issue preclusion" instead of "collateral estoppel." 104 Hawai'i at 365 n. 14, 90 P.3d at 257 n. 14. For purposes of this opinion, the terms are used interchangeably.

10. The members of the employer group included: The State of Hawai'i, the Judiciary, the City and County of Honolulu, County of Maui, County of Hawai'i, County of Kauai, and Hawaii Health Systems Corporation.

Court listed six categories of recognized public policy exceptions to nonmutual issue preclusion, including the consideration of a pre-existing legal relationship. *Id.* at 893–95, 128 S.Ct. at 2172–73.

The Arbitrator found that a pre-existing substantive legal relationship had existed since 1971 among the employer group members, as evidenced by the statutory mandate under Chapter 89 and the fifteen successive CBAs.

The Arbitrator was satisfied that the *Dorrance* factors had been met, state and federal case law supported the application of nonmutual offensive issue preclusion, and it was not against public policy to apply collateral estoppel—in particular, nonmutual offensive issue preclusion.

We note that in a recent federal arbitration case, the United States Court of Appeals for the Ninth Circuit held that

(1) arbitrators are not free to ignore the preclusive effect of prior judgments under the doctrines of res judicata and collateral estoppel, (2) arbitrators are entitled to determine in the first instance whether the prerequisites for collateral estoppel are satisfied, and (3) arbitrators possess broad discretion to determine when they should apply offensive non-mutual collateral estoppel.

*Collins v. D.R. Horton, Inc.,* 505 F.3d 874, 882 (9th Cir.2007) (internal quotation marks, citations, and brackets omitted).

■ Even if the Arbitrator applied the law incorrectly, when parties agree to arbitrate, they "assume all the hazards of the arbitration process including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact." *Tatibouet,* 99 Hawai'i at 233, 54 P.3d at 404 (internal quotation marks and citation omitted). Where the arbitration award was made in good faith, County is not "permitted to prove that the arbitrator[ ] decided wrong either as to the law or the facts of the case." *Id.* at 236, 54 P.3d at 407.

■ County argues that the Arbitrator exceeded his scope of authority when he decided the issue of collateral estoppel because that issue had not been submitted to

him as required under Section 15.20b.4 of the CBA.

The CBA defines the scope of an arbitrator's authority in rendering his decision and award:

*15.20 AWARD.*

*15.20a.* The Arbitrator shall render the award in writing no later than thirty (30) calendar days after the conclusion of the hearing(s) and submission of briefs provided, however, the submission of briefs may be waived by mutual agreement between the Union and the Employer.

*15.20b.* The award of the Arbitrator shall be final and binding provided, the award is within the scope of the Arbitrator's authority as described as follows:

*15.20b.1.* The Arbitrator shall not have the power to add to, subtract from, disregard, alter, or modify any of the sections of this Agreement.

*15.20b.2.* The Arbitrator shall be limited to deciding whether the Employer has violated, misinterpreted, or misapplied any of the sections of this Agreement.

*15.20b.3.* A matter that is not specifically set forth in this Agreement shall not be subject to arbitration.

*15.20b.4. The Arbitrator shall not consider allegations which have not been alleged in Steps 1 and 2.*

(Emphasis added.)

Under Section 15.20b.4., the arbitrator may not consider allegations that were not alleged at Step 1 or Step 2 of the grievance process. However, the arbitrator may consider a request for summary disposition under HRS § 658A–15(b)(2) (Supp.2010), which provides that, with notification to the other parties, a party may ask an arbitrator to "decide a request for summary disposition of a claim or particular issue."

Here, UPW filed a motion for summary disposition to estop County from re-litigating the issue of holiday pay. It was within the Arbitrator's authority to consider the issue of collateral estoppel when addressing UPW's request for summary disposition, in keeping with the goal of promoting judicial economy, avoiding inconsistent results, and providing

an efficient and less costly procedure. *Exotics Hawai'i–Kona*, 104 Hawai'i at 365, 90 P.3d at 257; Uniform Arbitration Act, § 15 cmt. 2 (2000).

 County contends the Arbitrator exceeded his scope of authority in violation of public policy. County argues that the Arbitrator materially altered the CBA by making an award in one grievance final and binding on parties in another grievance. County asserts that this alleged material alteration of the CBA violated public policy by denying the employees their right to participate in the collective bargaining process.

County acknowledges that HRS Chapter 89 requires multi-party *negotiations* of the CBA, but contends the application of collateral estoppel will force the public employers to collectively *administer* the CBA, which materially alters the CBA. County suggests that the public employers will each need to monitor grievances filed against any of the other employers in the employer group to protect their own interests. County argues that this alleged joint administration violates the intent of Chapter 89 to "promote efficient and orderly government operations" and represents a material change in the CBA. County also argues that applying collateral estoppel impacts each employer's right to "[d]etermine methods, means, and personnel by which the employer's operations are to be conducted," as provided under HRS § 89–9(d)(7).

Because County and UPW agreed under the CBA to have an arbitrator rather than a judge resolve disputes, "it is the arbitrator's view of the facts and of the meaning of the contract that [County and UPW] have agreed to accept." *United Paperworkers Int'l Union*, 484 U.S. at 37–38, 108 S.Ct. at 370. In spite of County's public policy claim that the Arbitrator's interpretation of the CBA represented a material alteration of the CBA, the essence of the argument is that the Arbitrator misinterpreted the CBA and the statute.

 Insofar as County attempts to raise a public policy question, a court may not enforce a contract "that is contrary to public policy." *W.R. Grace & Co.*, 461 U.S. at 766, 103 S.Ct. at 2183. It follows that "[i]f the

contract as interpreted [by an arbitrator] violates some explicit public policy, [the courts] are obliged to refrain from enforcing it." *Id.* To apply an exception to the deference generally given to arbitration awards,

> the public policy exception requires a court to determine that (1) the award would violate some explicit public policy that is well defined and dominant, and that is ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests, and (2) the violation of the public policy is clearly shown. Hence, a refusal to enforce an arbitration award must rest on more than speculation or assumption.

*Inlandboatmen's Union*, 77 Hawai'i at 193–94, 881 P.2d at 1261–62 (internal quotation marks, citations, brackets, and ellipsis omitted).

 County fails to clearly show a violation of an explicit, well-defined, and dominant public policy, which is necessary for a court to recognize the limited public policy exception to the general deference given to arbitration awards. "[C]ourts have no business overruling [the arbitrator] because their interpretation of the contract is different from [the arbitrator's]." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," a court may not overturn his decision. *United Paperworkers Int'l Union*, 484 U.S. at 38, 108 S.Ct. at 371. The First Circuit Court did not err in confirming the Arbitration Award.

Because we affirm the Judgment of the First Circuit Court, thereby concluding this appeal, we consider UPW's contention that the First Circuit Court erred in staying the enforcement of its Judgment pending appeal to be moot.

### IV.

The Judgment filed on September 16, 2009 in the Circuit Court of the First Circuit is affirmed.

Concurring Opinion by GINOZA, J.

I respectfully concur in the result. In this appeal, Appellant County of Hawaiʻi (County) contends that the Circuit Court of the First Circuit (Circuit Court) erred in confirming the arbitration award issued by Michael Marr (Arbitrator) in favor of Appellee United Public Workers, AFSCME, Local 646, AFL–CIO (UPW). The County asserts that the Circuit Court erred by: (1) determining that venue was proper in the First Circuit; (2) ruling that the arbitration award did not violate public policy and was thus enforceable; and (3) ruling that the Arbitrator did not exceed his authority by rendering an award based on collateral estoppel/issue preclusion.[1] UPW contests the County's points of error and also claims that the County waived any right to judicial review of the arbitration award by its failure to file a motion to vacate the award.

As set forth below, I would conclude as follows:

(1) Analyzing the venue issue under Hawaii Revised Statutes (HRS) § 658A–27 (Supp.2010) *in pari materia* with relevant provisions in HRS § 658A–15 (Supp.2010), venue was proper in the First Circuit.

(2) The County has not waived its right to challenge the arbitration award on public policy grounds, even though it did not file a motion to vacate the award, because the public policy exception is a judicially recognized exception not enumerated under HRS § 658A–23 (Supp.2010) (Vacating award). The Arbitrator was legally incorrect in deciding that issue preclusion applied to the County in this case. However, the Arbitrator's error in applying the law does not rise to the level of invoking the public policy exception recognized in *Inlandboatmen's Union of the Pac., Haw. Region v. Sause Bros., Inc.*, 77 Hawaiʻi 187, 881 P.2d 1255 (App.1994).

(3) The County has waived its claim that the Arbitrator exceeded his powers because such a claim is covered by HRS § 658A–23

1. As noted by the majority, the terms "collateral estoppel" and "issue preclusion" have often been used interchangeably.

2. The parties do not dispute that UPW's motion to confirm the arbitration award was a motion

and the County failed to file a motion to vacate the award preserving this argument.

## I. Venue

The proper venue for UPW's motion to confirm the arbitration award is determined by the interpretation and construction of HRS § 658A–27. Statutory construction is a question of law reviewed on appeal *de novo*. *Ueoka v. Szymanski*, 107 Hawaiʻi 386, 392, 114 P.3d 892, 898 (2005). Moreover,

> Our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

*Id.*, at 392–93, 114 P.3d at 898–99 (brackets omitted); *See also* HRS § 1–16 (2009 Repl.) ("Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another.").

HRS § 658A–27 provides:

> [§ 658A–27] **Venue.** A motion pursuant to section 658A–5 shall be made in the court of the circuit in which the agreement to arbitrate specifies the *arbitration hearing* is to be held or, if the *hearing* has been held, in the court of the circuit in which it was held. Otherwise, the motion may be made in the court of any circuit in which an adverse party resides or has a place of business or, if no adverse party has a residence or place of business in this State, in the court of any circuit in this State. All subsequent motions shall be made in the court hearing the initial motion unless the court otherwise directs.

(Emphasis added[2].)

The County argues that the collective bargaining agreement (CBA) is silent as to

pursuant to HRS § 658A–5. HRS § 658A–5 (Supp.2010) states:

> [§ 658A–5] **Application for judicial relief.** (a) Except as otherwise provided in section 658A–28, an application for judicial relief under this chapter shall be made by motion to the

where an arbitration hearing is to be held, that no arbitration hearing was in fact held in this matter, and therefore the proper venue was in the Third Circuit, where the County resides or has a place of business.

UPW, in turn, argues that venue was proper in the First Circuit because the arbitration agreement states the place of hearing is to be "fixed by the arbitrator," the Arbitrator set the place to hear UPW's "motion for summary disposition" in Honolulu, and subsequent motions were heard via telephone conferences in which the Arbitrator and UPW's counsel were located in Honolulu while the County's counsel was located in the County of Hawai'i. UPW further argues that no evidentiary hearing was held in the County of Hawai'i, and the final arbitration award and all prior orders were rendered from Honolulu where the Arbitrator was located.

The key question is what constitutes an "arbitration hearing" under HRS § 658A–27. In construing this statute, it is helpful to consider other HRS Chapter 658A provisions *in pari materia* which may shed light on this issue. Reading the plain language of HRS § 658A–27 in context with other relevant provisions in HRS Chapter 658A, particularly HRS § 658A–15 (Arbitration Process), I believe an "arbitration hearing" was held in this matter when the Arbitrator decided to hold a hearing on UPW's "motion for summary disposition" and the parties were allowed to be heard on the matter and to submit evidence by way of declarations and numerous exhibits.

Under HRS § 658A–15, different parts of the arbitration process are established, including an arbitrator's authority to (a) "hold conferences with the parties" that are held "before the hearing" and (b) "decide a request for summary disposition." In turn, an arbitrator may order a "hearing" as set forth in HRS § 658A–15(c) and (d). HRS § 658A–15 establishes the different aspects of the "arbitration process" as follows:

[§ 658A–15] **Arbitration process.** (a) An Arbitrator may conduct an arbitration in such manner as the arbitrator considers appropriate for a fair and expeditious disposition of the proceeding. *The authority conferred upon the arbitrator includes the power to hold* **conferences** *with the parties to the arbitration proceeding* **before the hearing** *and,* among other matters, determine the admissibility, relevance, materiality, and weight of any evidence.

(b) *An arbitrator may decide a* **request for summary disposition** *of a claim or particular issue* :

(1) If all interested parties agree; or

(2) Upon request of one party to the arbitration proceeding if that party gives notice to all other parties to the proceeding, and the other parties have a reasonable opportunity to respond.

(c) *If an arbitrator orders a* **hearing,** the arbitrator shall set a time and place and give notice of the hearing not less than five days before the hearing begins. Unless a party to the arbitration proceeding makes an objection to lack or insufficiency of notice not later than the beginning of the hearing, the party's appearance at the hearing waives the objection. Upon request of a party to the arbitration proceeding and for good cause shown, or upon the arbitrator's own initiative, the arbitrator may adjourn the hearing from time to time as necessary but shall not postpone the hearing to a time later than that fixed by the agreement to arbitrate for making the award unless the parties to the arbitration proceeding consent to a later date. The arbitrator may hear and decide the controversy upon the evidence produced although a party who was duly notified of the arbitration proceeding did not appear. The court, on request, may direct the arbitrator to conduct the hearing promptly and render a timely decision.

court and heard in the manner provided by law or rule of court for making and hearing motions.
 (b) Unless a civil action involving the agreement to arbitrate is pending, notice of an initial motion to the court under this chapter shall be served in the manner provided by law for the service of a summons in a civil action. Otherwise, notice of the motion shall be given in the manner provided by law or rule of court for serving motions in pending cases.

(d) *At a **hearing** under subsection (c), a party to the arbitration proceeding has a right to be heard, to present evidence material to the controversy, and to cross-examine witnesses appearing at the hearing.*

(e) If an arbitrator ceases or is unable to act during the arbitration proceeding, a replacement arbitrator shall be appointed in accordance with section 658A–11 to continue the proceeding and to resolve the controversy.

(Emphasis added.)

In this case, the record reflects that the Arbitrator allowed UPW to file a "motion for summary disposition," pursuant to HRS § 658A–15(b). In addition to briefing the motion, and consistent with HRS § 658A–15(c) and (d), the Arbitrator decided to hold a hearing and the parties were allowed to submit evidence via declarations and exhibits. As specified by HRS § 658A–15(d), the parties were allowed "to be heard" and "to present evidence material to the controversy." There is nothing in the record to suggest that either party sought to present witnesses at this hearing, but HRS § 658A–15 does not contemplate that an arbitration hearing is held only when witnesses appear. Rather, the statute establishes the right at a hearing to be heard, to present evidence, and to cross-examine witnesses that do appear at the hearing.

In this case, the Arbitrator set an arbitration hearing as contemplated by HRS § 658A–15 to be held in Honolulu, the hearing was in fact held in Honolulu, and the parties were allowed to be heard and to present evidence. Because an arbitration hearing was held in Honolulu, venue was proper in the First Circuit under the terms of HRS § 658A–27.

## II. *Public Policy Exception*

### A. *The County has not waived its challenge based on the public policy exception*

The County argues that the arbitration award should not have been confirmed because it is contrary to public policy. This court has recognized "a limited public policy exception to the general deference given arbitration awards" which is to be applied under the guidelines of *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) "and as such guidelines may be refined in future cases." *Inlandboatmen's Union*, 77 Hawai'i at 194, 881 P.2d at 1262.

UPW responds, *inter alia*, that the County waived its right to judicial review because it did not file a motion to vacate the arbitration award. When challenging an arbitration award on one of the grounds set forth in HRS § 658A–23 (Supp.2010) (Vacating award), a party must indeed file a timely motion to vacate under that statute. Otherwise, the right to appeal a confirmation order and challenge it on any of the grounds under HRS § 658A–23 is waived. *Cf., Excelsior Lodge No. One v. Eyecor, Ltd.*, 74 Haw. 210, 223–28, 847 P.2d 652, 658–60 (1992) (considering statutes in predecessor HRS Chapter 658, a party that failed to challenge an arbitration award in conformance with statutes allowing for vacating, modifying or correcting an award would be foreclosed from subsequently appealing a confirmation order); *Schmidt v. Pac. Benefit Servs., Inc.*, 113 Hawai'i 161, 168, 150 P.3d 810, 817 (2006); *Mathewson v. Aloha Airlines, Inc.*, 82 Hawai'i 57, 82, 919 P.2d 969, 994 (1996) (construing predecessor HRS Chapter 658, "a party seeking to *change* the substance or amount of an arbitration award must timely move *either* to vacate the award under HRS § 658–9 *or* to modify or correct it under HRS § 658–10.")

However, the County may still challenge the arbitration award on public policy grounds even though it did not file a motion to vacate the award and instead only opposed UPW's motion for confirmation in the Circuit Court. As recognized in *Inlandboatmen's Union*:

[a] party's claim that an arbitrator's award under a contract would compel it to violate a statute necessarily invokes consideration of a public policy exception to the general deference given arbitration awards which *does not fit within the literal definition of vacating, modifying or correcting an*

*award under the express provisions of HRS chapter 658.*

77 Hawai'i at 193, 881 P.2d at 1261 (emphasis added).[3] In *Inlandboatmen's Union,* this court considered whether the public policy exception applied even though the party challenging the arbitration award had not filed a motion to vacate, modify, or correct the award as was then allowed under HRS Chapter 658. *See also Gepaya v. State Farm Mut. Auto. Ins. Co.,* 94 Hawai'i 362, 365, 14 P.3d 1043, 1046 (2000) (citing *Inlandboatmen's Union* and acknowledging there is a "judicially recognized" exception to confirming an arbitration award when the award clearly violates public policy).

The basis for the public policy exception was explained as follows:

A court will not enforce "any contract ... that is contrary to public policy." *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber Workers,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298, 307 (1983). It follows then that "[i]f the contract as interpreted [by an arbitrator] violates some explicit public policy, [the courts] are obliged to refrain from enforcing it." *Id.* Thus, the U.S. Supreme Court has recognized a "public policy" exception to the general deference given arbitration awards. *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

A court's refusal to enforce an arbitrator's award ... because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy. *[The "public policy" exception] derives from the basic notion that no court will lend its aid to one who founds a cause of action upon an*

immoral or illegal act, and is further justified by the observation that the public's interests in confining the scope of private agreements to which it is not a party will go unrepresented unless the judiciary takes account of those interests when it considers whether to enforce such agreements.

*Id.* at 42, 108 S.Ct. at 373, 98 L.Ed.2d at 301–02 (citations omitted).

*Inlandboatmen's Union,* 77 Hawai'i at 193, 881 P.2d at 1261 (emphasis added).

Here, the County did not file a motion to vacate, modify or correct the arbitration award. Nonetheless, because the public policy exception is not based on any of the reasons provided under HRS § 658A–23 or § 658A–24 for vacating, modifying, or correcting an award, and instead is based on the concept that a court should not lend its aid to an illegal act, I believe the County has not waived its right to contest the Circuit Court's confirmation order on appeal based on public policy grounds. The County raised the public policy exception in the Circuit Court in opposing UPW's motion to confirm the arbitration award.

**B.** *The Arbitrator was incorrect on the law in concluding that issue preclusion applied to the County*

The County argues that the arbitration award violates public policy because the Arbitrator improperly determined, under principles of issue preclusion, that the County was bound by the arbitration decision in *State of Hawai'i, University of Hawai'i v. United Public Workers, AFSCME, Local 646, AFL–CIO* (Re: Class Grievance Involving Denial Of Holiday Pay) (2003) (Parnell, Arb.) (Parnell arbitration). In the "Order Granting in Part and Denying in Part [UPW's] Motion for Summary Disposition Filed on March 24, 2008," the Arbitrator

---

**3.** *Inlandboatmen's Union* considered statutes under HRS Chapter 658. In the 2001 Legislature, HRS Chapter 658 was repealed and replaced by HRS Chapter 658A, effective as of July 1, 2002. *See* 2001 Haw. Sess. Laws Act 265. Similar to HRS Chapter 658, however, the current provisions in HRS Chapter 658A allow a party to an arbitration award to file a motion to vacate, modify or correct an arbitration award for speci-

fied reasons. *See* HRS §§ 658A–23 and 658A–24 (Supp.2010). Therefore, the recognition in *Inlandboatmen's Union,* that the public policy exception does not fit within the statutory provisions for vacating, modifying or correcting an award, continues to apply under HRS Chapter 658A. The public policy exception is a judicially recognized exception.

stated that he was applying a combination of state law and principles set forth in *Taylor v. Sturgell*, 553 U.S. 880, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) concerning issue preclusion. In my view, Hawaiʻi case law does not support application of issue preclusion in this case, and the Arbitrator misread and misapplied *Taylor*.

### 1. *Hawaiʻi Law*

The Parnell arbitration was litigated between UPW and the State of Hawaiʻi, University of Hawaiʻi (University) and that decision was later reduced to judgment. The County was never a party to that litigation.

As noted by the majority, the starting point for analyzing issue preclusion under Hawaiʻi law is the four-part test established in *Dorrance v. Lee*, 90 Hawaiʻi 143, 149, 976 P.2d 904, 910 (1999). Re-litigation of an issue is barred where:

(1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication[.]

Because the County was not a party to the Parnell arbitration and is the party against whom collateral estoppel is asserted, the key question is whether the County was "in privity" with the University. As explained below, in cases similar to this, the concept of privity under Hawaiʻi law has been directly tied to *whether the party to be bound was adequately represented in the prior litigation.*

In *Lingle v. Hawaiʻi Gov't Emps. Ass'n, AFSCME, Local 152*, 107 Hawaiʻi 178, 111 P.3d 587 (2005), the Hawaiʻi Supreme Court analyzed the four-part *Dorrance* test, and particularly the question of privity, in a case involving collective bargaining agreements and management rights under HRS Chapter 89. In that case, UPW and the State Department of Transportation (DOT) arbitrated a dispute as to whether DOT was required to temporarily assign a Bargaining Unit 1 (BU–1) employee to a vacant Bargaining Unit 2 (BU–2) position. UPW represents BU–1 employees and Hawaiʻi Government Employees Association (HGEA) represents BU–2 employees. HGEA was not party to the arbitration between UPW and DOT, which was ultimately decided in favor of UPW and confirmed in the circuit court.

In a separate proceeding, DOT had petitioned the Hawaiʻi Labor Relations Board (HLRB) for a declaratory ruling of its management rights under HRS § 89–9(d), claiming that the arbitrator could not require it to assign a BU–1 employee to the BU–2 position because that would violate a collective bargaining agreement with HGEA. HGEA intervened in the HLRB proceeding.

When the HLRB denied DOT's petition on mootness grounds, an appeal was taken to the circuit court and then ultimately to the Hawaiʻi Supreme Court. One of the issues addressed on appeal was UPW's claim that HGEA was collaterally estopped from seeking declaratory relief in the HLRB proceeding because HGEA was in privity with DOT in the arbitration proceeding. Considering the *Dorrance* four-part test, the court concluded that privity was lacking, explaining:

In addressing *privity*, this court has previously stated that *"[p]reclusion is fair in circumstances where the nonparty and party had the same practical opportunity to control the course of the proceedings."* *Bush v. Watson*, 81 Hawaiʻi 474, 480, 918 P.2d 1130, 1136 (1996) (citation omitted). "Preclusion may also be appropriate *where the party in the previous action was acting in a representative capacity for the current party.* However, several important rules limit the extent of preclusion by representation. The most obvious rule is that the *representative must have been appointed by a valid procedure."* *Id.* at 481, 918 P.2d at 1137 (citation, brackets and quotation marks omitted).

In the instant case, HGEA's participation in the arbitration proceedings was limited to the testimony of HGEA representatives who were called to testify by UPW. HGEA was not a party in the arbitration and, thus, was not allowed to call its own witnesses or cross-examine witnesses for UPW. As such, it cannot be said

that HGEA had the same opportunity as the DOT to control the arbitration proceedings. In addition, although UPW argues that the DOT served as a representative of HGEA, there is no evidence in the record that HGEA appointed the DOT to represent its interests by any valid procedure. Accordingly, because HGEA was not in privity with the DOT, we hold that HGEA was not collaterally estopped from seeking a declaratory ruling from the HLRB.

107 Hawai'i at 186–87, 111 P.3d at 595–96 (emphasis added).

In *Lingle,* the court relied on its previous decision in *Bush v. Watson,* 81 Hawai'i 474, 918 P.2d 1130 (1996), where defendants in a state court action had asserted the plaintiffs' claims were precluded by litigation in a federal court action. In *Bush,* the Hawai'i Supreme Court held that there was no privity between plaintiffs in that state action and the plaintiffs in the federal action. Even though two plaintiffs in the state action had participated as amici in the appeal in the federal action, there was no showing: that they controlled the federal litigation; or that any plaintiff in the federal action was acting as a representative for the state action plaintiffs, "much less was appointed as a representative by a valid procedure." *Id.* at 479–81, 918 P.2d at 1135–37.

In another case addressing privity and applying *Bush,* the Hawai'i Supreme Court expressly noted that it had rejected the theory of "virtual representation" stating:

> We declined … in *Bush,* to preclude a non-party to the prior litigation based on, essentially, "virtual representation," and we decline to do so now. We adhere to our ruling in *Bush* that for a party to the prior litigation to have been representing a nonparty, "the representative must have been appointed by a valid procedure."

*SHOPO v. Soc'y of Prof'l Journalists–Univ. of Hawai'i Chapter,* 83 Hawai'i 378, 401, 927 P.2d 386, 409 (1996). In *SHOPO,* the court thus held that collateral estoppel did not apply to preclude parties in that case from re-litigating the constitutionality of a statute when they were not parties to a prior suit addressing the same issue.

Given the principles underlying privity as established by these cases, which focus on the adequacy of representation in the prior litigation, there was no privity between the County and the University. The party asserting preclusion has the burden of establishing the *Dorrance* elements. *See Lingle,* 107 Hawai'i at 186, 111 P.3d at 595. In this case, UPW made no showing that the County and the University had the same practical opportunity to control the course of the proceedings in the Parnell arbitration. There also is no showing that the University was acting in a representative capacity for the County in the Parnell arbitration or that the University was appointed to represent the County by way of a valid procedure.

Under Hawai'i case law, therefore, the requirements for issue preclusion against the County were not met.

## 2. *Taylor v. Sturgell*

The Arbitrator's reliance on *Taylor* in deciding the question of issue preclusion was also incorrect. Rather than supporting application of issue preclusion to the County in this case, I believe *Taylor* supports the opposite. Similar to the Hawai'i Supreme Court, the United States Supreme Court in *Taylor* rejected the "virtual representation" exception to the general rule against nonparty issue preclusion. By finding privity between the County and the University based on their contractual relationship via the CBA, and by applying preclusion without procedural protections to ensure adequate representation of the County during the Parnell arbitration, the Arbitrator applied a version of "virtual representation" that was rejected in *Taylor.*

The *Taylor* court explained that different federal courts of appeals had adopted varying tests under the theory of "virtual representation," requiring *inter alia*: "identity of interests" between the party to be bound and the party subject to the prior judgment; and "adequate representation" defined in a variety of ways. The court rejected the theory of "virtual representation" on three grounds.

First, the court stated that "our decisions emphasize the fundamental nature of the general rule that a litigant is not bound by a

judgment to which she was not a party." 553 U.S. at 898, 128 S.Ct. at 2175. Second, and particularly important in this case, the court explained the requirements needed to establish adequate representation. In this regard, the court stated:

A party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representative are aligned; and (2) *either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty.* In addition, adequate representation sometimes requires (3) *notice of the original suit to the persons alleged to have been represented.* In the class-action context, these limitations are implemented by the procedural safeguards contained in Federal Rule of Civil Procedure 23.

553 U.S. at 900–01, 128 S.Ct. at 2176 (citations omitted) (emphasis added). The court further explained its distaste for the broad concept of "virtual representation" because it would "authorize preclusion based on identity of interest and some kind of relationship between the parties and nonparties," but without adequate procedural protections. *Id.* at 901, 128 S.Ct. at 2176. Third, the *Taylor* court rejected the "virtual representation" exception because it would "likely create more headaches than it relieves" and noting that "[p]reclusion doctrine, it should be recalled, is intended to reduce the burden of litigation on courts and parties." *Id.*

In the instant case, the requirements for adequate representation as described in *Taylor* were not met. Even if it were assumed that the interests of the County and the University were "aligned," there is nothing in the record to suggest that the University understood during the Parnell arbitration that it was acting in a representative capacity for the County and nothing in the record to suggest that the arbitrator in that case "took care to protect the interests" of the County. Further, there is no showing that the County had notice of the Parnell arbitration when it was being litigated. Thus, a version of the "virtual representation" exception that was

rejected in *Taylor* was applied by the Arbitrator in this case.

In rendering his decision on issue preclusion, the Arbitrator specifically relied on two of six exceptions recognized in *Taylor* as allowing nonparty issue preclusion. The Arbitrator concluded that, since the 1970's, there has been a "pre-existing substantive legal relationship" between the County and the University because of the statutory scheme adopted in Hawai'i regarding collective bargaining and the development of that statutory scheme over time. However, the exception recognized in *Taylor* based on a pre-existing "substantive legal relationship" does not encompass collective bargaining agreements. Rather, although not necessarily exhaustive, the *Taylor* court described the types of "qualifying relationships" under this exception as including "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor." *Id.* at 894, 128 S.Ct. at 2172. "These exceptions originated 'as much from the needs of property law as from the values of preclusion by judgment.'" *Id.* (quoting 18A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4448, p. 329 (2d ed.2002)); *see also* 2 Restatement (Second) of Judgments §§ 43–44, 52, 55 (1982). The pre-existing substantive legal relationship exception recognized in *Taylor* does not, in my view, apply to this case.

The other exception discussed in *Taylor* and relied upon by the Arbitrator provides that, "in certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a party to the suit." *Id.* at 894, 128 S.Ct. at 2172 (quotation marks and brackets omitted). However, as explained in *Taylor,* "[r]epresentative suits with preclusive effect on nonparties include properly conducted class actions, and suits brought by trustees, guardians, and other fiduciaries." *Id.* (citations omitted). Again, this exception does not, in my view, apply to this case.

In sum, therefore, I believe the Arbitrator incorrectly analyzed and applied the principles set out in *Taylor.*

### C. The Arbitrator's error on the law does not invoke the public policy exception

Because in my view the Arbitrator misconstrued the law in ruling that the County was bound by the Parnell arbitration decision, the question ultimately is whether the Arbitrator's erroneous application of the law regarding issue preclusion rises to the level of invoking the public policy exception recognized in *Inlandboatmen's Union.*

It has long been recognized in Hawai'i that where parties have agreed to arbitration, "they thereby assumed all the hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact." *Mars Constructors, Inc. v. Tropical Enterprises, Ltd.,* 51 Haw. 332, 336, 460 P.2d 317, 319 (1969). *See also Daiichi Hawai'i Real Estate Corp. v. Lichter,* 103 Hawai'i 325, 336, 82 P.3d 411, 422 (2003); *Tatibouet v. Ellsworth,* 99 Hawai'i 226, 236, 54 P.3d 397, 407 (2002). Given these precepts, the limitations on judicial review in these circumstances, and, consistent with that, the high bar set for applying the public policy exception in cases decided to date, I conclude that the requirements for invoking the public policy exception have not been met.

The public policy exception recognized in *Inlandboatmen's Union* is a limited exception and only applies when "(1) the award would violate some explicit public policy that is well defined and dominant, and that is ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests, and (2) the violation of the public policy is clearly shown." 77 Hawai'i at 193–94, 881 P.2d at 1261–62 (citations, internal quotation marks, brackets and ellipses omitted).

Further, the public policy exception is to be applied under the guidelines of *Misco* and as those guidelines are refined in other cases. *Inlandboatmen's Union,* 77 Hawai'i at 194, 881 P.2d at 1262. Therefore, it is significant to note that—up to this juncture in time—this court, the Hawai'i Supreme Court, and the United States Supreme Court have primarily considered the public policy exception in regard to whether *implementation* of an arbitration award or *the remedy* provided under an award would violate public policy, and not whether an arbitrator misconstrued the law in reaching his or her decision. *See Inlandboatmen's Union; Mathewson; Misco;*[4] *Eastern Associated Coal Corp. v. United Mine Workers of Am., Dist. 17,* 531 U.S. 57, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000).

In *Inlandboatmen's Union,* grievances under a collective bargaining agreement were arbitrated and the arbitration award provided, *inter alia,* that affected employees had the right "to complete their scheduled watches" and to be assigned work under certain circumstances, and that the employer could not terminate a scheduled watch to avoid paying overtime. The employer, Sause Bros., Inc. (Sause), challenged this aspect of the award claiming that *implementation* of the award could cause Sause to violate federal law regarding manning vessels. Although the public policy exception was recognized, this court ultimately concluded that its requirements were not met. That is, although Sause pointed to a specific federal statute, it had not clearly shown that the statute would be violated. This court noted:

> We are mindful that the public policy exception "does not otherwise sanction a broad judicial power to set aside arbitration awards as against public policy[,]" *Id.* and that we "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."

77 Hawai'i at 196, 881 P.2d at 1264.

In *Mathewson,* the Hawai'i Supreme Court considered application of the public policy

4. In *Misco,* the United States Supreme Court expressly noted that "[w]e need not address the Union's position that a court may refuse to enforce an award on public policy grounds only when the award itself violates a statute, regulation, or other manifestation of positive law, or compels conduct by the employer that would violate such a law." 484 U.S. at 45 n. 12, 108 S.Ct. at 374 n. 12; *see also id.* at 46, 108 S.Ct. at 375 (Blackmun, J. and Brennan, J., concurring) ("[T]he Court does not reach the issue upon which certiorari was granted: whether a court may refuse to enforce an arbitration award rendered under a collective-bargaining agreement on public policy grounds only when the award itself violates positive law or requires unlawful conduct by the employer.").

exception and noted *Inlandboatmen's Union* as "recognizing [the] test established in [*Misco* ], for application of [the] public policy exception to *enforcement of arbitration awards.*" 82 Hawai'i at 78 n. 18, 919 P.2d at 990 n. 18 (emphasis added). The court considered and rejected an employer's argument that an arbitration award reinstating a terminated airline pilot had violated public policy.

In *Misco,* an arbitration award reinstated an employee who had been terminated for allegedly possessing marijuana in the parking lot of a paper converting plant. The employee operated a machine that used sharp blades to cut rolling coils of paper. The employer challenged the arbitration award, arguing that reinstating the employee (*i.e.,* implementing the award) was contrary to public policy. The United States Supreme Court recognized the public policy exception, but reversed the court of appeals, which had vacated the award, because: the lower court "made no attempt to review existing laws and legal precedents in order to demonstrate that they establish a 'well-defined and dominant' policy against the operation of dangerous machinery while under the influence of drugs[,]" 484 U.S. at 44, 108 S.Ct. at 374; even if such public policy existed, a violation was not clearly shown because finding marijuana in the employee's car was insufficient to establish actual use of drugs in the workplace; and under the award, the employee could be reinstated in an "equivalent" job and the record did not establish he would pose a serious threat in every such job for which he qualified.

Finally, in *Eastern Associated Coal Corp.,* the United States Supreme Court considered, and rejected, an employer's argument that an arbitration award violated public policy by reinstating an employee who had twice tested positive for marijuana. The employee's duties included driving heavy vehicles on public highways and under federal regulations he was subject to random drug testing. The court noted that the award did not violate any specific provision of law or regulation. Further, the court explained certain underlying principles, including that the parties had "bargained for the arbitrator's construction of their agreement" and that

"courts will set aside the arbitrator's interpretation of what their agreement means only in rare instances." 531 U.S. at 62, 121 S.Ct. at 466 (internal quotation marks omitted). Moreover, the court stated, "as long as an honest arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* (internal brackets and quotation marks omitted).

In the instant case, the implementation of the arbitration award requires the County to, *inter alia,* provide holiday pay entitlements to employees who were on leaves of absences without pay before, during, or after the holiday observance. The County does not argue that implementing this award violates any specific law or regulation. The County's closest argument in this regard is that the award violates public policies regarding collective bargaining as embodied in and underlying HRS Chapter 89. However, this argument does not establish that providing the holiday pay entitlements required by the award violates "explicit" public policy that is "well defined and dominant." The County points to no provision in HRS Chapter 89 that would be violated by implementing the award.

For these reasons, I conclude that the public policy exception does not preclude enforcement of the arbitration award.

### III. The County Has Waived Its Claim That The Arbitrator Exceeded His Authority

Under HRS § 658A–23, one of the bases for vacating an arbitration award is when an arbitrator has exceeded his authority or power. HRS § 658A–23(a)(4). Because the provisions in HRS Chapter 658A specifically address this basis for challenging an arbitration award, the County has waived this argument by failing to file a motion to vacate pursuant to HRS § 658A–23(a)(4). *Excelsior Lodge No. One,* 74 Haw. at 223–28, 847 P.2d at 658–60; *Schmidt,* 113 Hawai'i at 168, 150 P.3d at 817; *Mathewson,* 82 Hawai'i at 82, 919 P.2d at 994.

## IV. *Conclusion*

Based on the foregoing, I concur in the result which affirms the Circuit Court's judgment.